**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Fidencio SAENZ, Domitilla Garza, Genoveva Garcia, and Norma Solis, Defendants-Appellants.**

No. 83–2630.

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1984.

Rehearing and Rehearing En Banc Denied Jan. 3, 1985.

Ramon Garcia, Edinburg, Tex., for Saenz.

Genaro A. Garcia, Corpus Christi, Tex., (Court-appointed), for Garza.

Nancy M. Simonson, J.A. Canales, Corpus Christi, Tex., for Garcia.

Roland E. Dahlin, II, Federal Public Defender, (Court-appointed), Margorie A. Meyers, Antonio Balderas, Jr., Asst. Federal Public Defenders, Houston, Tex., for Solis.

Daniel K. Hedges, U.S. Atty., James R. Gough, Asst. U.S. Atty., Houston, Tex., Robert J. Erickson, Washington, D.C., for plaintiff-appellee.

Before GARZA, REAVLEY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Appellants Fidencio Saenz, Domitilla Garza, and Genoveva Garcia were convicted of conspiracy in violation of 42 U.S.C. § 1973i(c) and 18 U.S.C. §§ 371 and 372.[1] In addition, appellants Norma Solis, Garza, and Garcia were each convicted on one substantive count of vote buying in violation of 42 U.S.C. § 1973i(c). Appellants appeal their convictions urging that the evidence is insufficient to support their convictions. They argue further that the prosecutor committed misconduct sufficient to warrant reversal, that the trial court directed the verdict of the jury as to an essential element of the offense, that various evidentiary rulings were improper, and that their conduct was not constitutionally reached under section 1973i(c). We affirm.

## I. FACTS

Viewing the facts in the light most favorable to the Government, they show that the following transactions occurred. Fidencio Saenz and Gilberto Uresti were incumbent candidates for the offices of Duval County, Texas, county commissioner and county judge, respectively. Their names appeared on the May 1, 1982, Democratic Party primary election ballot.

During the month preceding the Democratic Party primary election, appellants, as well as other unindicted co-conspirators, conducted a door to door campaign. In several instances, prospective voters were offered welfare vouchers in exchange for their votes. In these instances, the pro-

---

1. 42 U.S.C. § 1973i(c) provides:

(c) Whoever knowingly or willfully gives false information as to his name, address, or period of residence in the voting district for the purpose of establishing his eligibility to register or vote, or conspires with another individual for the purpose of encouraging his false registration to vote or illegal voting, or pays or offers to pay or accepts payment either for registration to vote or for voting shall be fined not more than $10,000 or imprisoned not more than five years, or both: *Provided, however,* That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector, Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

18 U.S.C. § 371 provides:

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons [do] any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

18 U.S.C. § 372 provides:

If two or more persons in any State, Territory, Possession, or District conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, or to induce by like means any officer of the United States to leave the place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties, each of such persons shall be fined not more than $5,000 or imprisoned not more than six years, or both.

spective voters were referred to the Duval County Welfare Office. There they were issued welfare vouchers that could be redeemed for food, clothing, or medical services. The facts surrounding specific solicitations will be discussed where appropriate.

## II. SUFFICIENCY OF THE EVIDENCE

In examining the appellants' attack on the sufficiency of the evidence, we must decide whether "a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983) (footnote omitted). In doing so, we must view the evidence and the inferences that may be drawn from it in the light most favorable to the jury verdict. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

(a) *The Evidence is Sufficient to Support the Conviction of Garza and Solis on Substantive Counts of Vote Buying*

Appellant Garza was convicted of one substantive count of paying and offering to pay Elizabeth Yarberry for her vote.[2] Appellant Solis was convicted of one substantive count of paying and offering to pay Mercedes Gonzales for her vote. Garcia does not directly challenge the sufficiency of the evidence supporting her convictions on the substantive charge.[3] We affirm each conviction.

Garza's conviction rests exclusively on the testimony of Yarberry and Candula Torres. Yarberry testified that Domitilla Garza and Norma Solis came to see her before the May primary election. On their first visit, the defendants left a sample ballot on Yarberry's door.[4] Subsequently, Garza came by her house to see if she had voted. Yarberry said she was planning to go the day of the election. Garza showed Yarberry a marked sample ballot and told her to vote for "Gilbert Estes." If she did, "they would help [her]."[5] Following that conversation, Yarberry asked Garza to help her get a voucher. Yarberry then went to the civic center to get a voucher. When she arrived, Candula Torres was expecting Yarberry because Garza had told her she was coming. Yarberry received a voucher for $45.00. Yarberry testified she voted on election day after Garza and Solis took her to the polling place, in Garza's car. Garza and Solis gave her a marked sample ballot and told her to vote the way it was marked. On the way back to her home, Yarberry asked whether they were going to buy her something for voting. Solis purchased a six pack of beer for her.

The court then questioned Yarberry.[6]

The court: Did somebody promise you anything for your vote?

The witness: Yes, sir.

The court: Who was that?

The witness: Domi Garza.

The court: That's Domitilla Garza?

The witness: Yes, sir.

The court: Did Norma Solis promise you anything?

---

2. The indictment charged both Domitilla Garza and Norma Solis with offering to pay, paying, and aiding and abetting each other to pay and offering to pay Elizabeth Yarberry for her vote.
 Norma Solis was acquitted on this substantive count which related to Yarberry.

3. Even though Garcia does not directly challenge the sufficiency of the evidence supporting her conviction, we find the evidence sufficient. From the testimony of Maria Cardenas and Zenaida Alaniz, a reasonable trier of fact could find that the evidence establishes Garcia's guilt beyond a reasonable doubt.

4. Yarberry testified that she knew who left the ballot because it was "Domi's car" and Norma Solis was driving it. Record at 591.

5. Record Vol. V at 595.

6. The trial court is allowed to question witnesses so long as an atmosphere of neutrality is maintained. *United States v. Jackson,* 700 F.2d 181 (5th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983); *United States v. Gonzalez,* 700 F.2d 196 (5th Cir.1983).

The witness: No. Just the six-pack. That is all.

The court: After you voted?

The witness: After I voted, yes, sir.

. . . .

The court: No I understand that part. What is it exactly that Domitilla Garza told you?

The witness: She told me she would help me if I voted the right way, which was for Gilbert Estes.

The court: You call him "Gilbert Estes," I take it [that it is] Gilbert Uresti; County Judge that you are talking about?

The witness: Well, the County Judge, sir . . .

. . . .

The court: . . . Well, when Domi made you that promise was Norma Solis with her?

The witness: No, sir. We were on the phone.

The court: On the phone. So the only time Norma Solis did something for you was after you voted?

The witness: Yes.

The court: After you asked her for a six-pack? Is that what your testimony is?

The witness: Yes, sir.[7]

Yarberry's testimony[8] is challenged by appellants Saenz and Garcia.[9] Saenz and Garcia contend that Garza's solicitation of Yarberry's vote is not supported by the evidence. Defendant Garcia contends that Yarberry was not competent to testify, and that her testimony was confusing and conflicting.

Fed.R.Evid. 601 provides that "[e]very person is competent to be a witness except as provided otherwise in [the] rules." A witness is competent to testify if she is capable of communicating relevant material and understands she has an obligation to do so. *United States v. Villatta*, 662 F.2d 1205, 1206 (5th Cir.1981), *cert. denied*, 456 U.S. 916, 102 S.Ct. 1771, 72 L.Ed.2d 175 (1982). Furthermore, competency of a witness is a matter to be decided in the trial court's sound discretion. *Gurleski v. United States*, 405 F.2d 253 (5th Cir.1968), *cert. denied*, 395 U.S. 977, 89 S.Ct. 2127, 23 L.Ed.2d 765 (1969). We conclude that Yarberry was not shown to be an incompetent witness, and the district court did not err by allowing her to testify.

Furthermore, the Court of Appeals must accept all credibility choices made that tend to support the jury's verdict. *United States v. Rodriguez*, 654 F.2d 315, 317 (5th Cir.1981). *United States v. Beason*, 690 F.2d 439 (5th Cir.1982), *cert. denied*, 459 U.S. 1177, 103 S.Ct. 828, 74 L.Ed.2d 1023 (1983). It is for the jury to resolve any conflicts within a witness' testimony. *United States v. Ortega-Chavez*, 682 F.2d 1086, 1091 (5th Cir.1982).

Given that we must accept the jury's credibility choices and its resolution of the conflicts in Yarberry's testimony, it is clear that the evidence supports Garza's conviction. Yarberry testified that Garza promised to "help her" if she voted the right way. Yarberry was later given a food voucher by Candula Torres, who testified that Garza told her Yarberry was coming for a voucher. From this evidence, a reasonable trier of fact could find that the

---

7. Record Vol. V at 601–02.

8. Candula Torres also testified regarding appellant Garza. Torres stated that Garza had told her that Elizabeth Yarberry called regarding a voucher. Torres also testified that Garza would make a motion [give a signal] if it was all right for her to issue someone a voucher. Torres said she interpreted the signal to mean the applicant involved had voted the right way. Record Vol. VI at 735–37.

9. Defendants Garcia and Saenz challenge Yarberry's testimony because Garza's solicitation of Yarberry forms the basis for one of the overt acts alleged in the conspiracy count in the indictment. Garcia and Saenz assert the evidence is insufficient to support Garza's conviction; therefore, they allege the Government has failed to prove the requisite overt act necessary to support Garcia's and Saenz's conspiracy convictions.

evidence establishes Garza's guilt beyond a reasonable doubt. *Bell,* 678 F.2d at 549.

Norma Solis also challenges her conviction, alleging that the evidence is insufficient to support her conviction. She was convicted of paying and offering to pay Mercedes Gonzales for her vote. Contrary to Solis' contentions, we find the evidence sufficient.

Mercedes Gonzales testified that Solis promised that Gonzales could pick up a welfare voucher if she voted for Judge Uresti. After Gonzales contradicted herself several times, the court told her she need not be afraid of anything or anyone. Then the court questioned Gonzales:

> The court: ... Did Norma Solis and Elvira Garza Rodriguez go to your house and ask you to vote for a candidate?
>
> The witness: In '82?
>
> The court: Yes, in '82. Did either one of them promise you anything for your vote for a candidate?
>
> The witness: Just a voucher for food.
>
> The court: All right. Who is it that told you that if you voted for that—for a candidate that you would receive a voucher?
>
> The witness: Norma.[10]

When asked why she contradicted herself earlier, Gonzales indicated she just didn't want to get involved.[11]

■ As we have stated, it is for the jury to resolve any conflicts within a witness' testimony. *United States v. Ortega-Chavez,* 682 F.2d at 1091. Taking the facts in the light most favorable to the Government, we conclude that from Gonzales' testimony, a reasonable trier of fact could find that the evidence establishes Solis' guilt beyond a reasonable doubt.

(b) *The Evidence is Sufficient to Support the Conspiracy Convictions of Saenz, Garcia, and Garza*

■ In order to convict for criminal conspiracy, "the jury must find 'an agree-

ment between two or more persons to commit a crime, and an overt act by one of the conspirators to further the agreement.'" *United States v. Lyons,* 703 F.2d 815, 822 (5th Cir.1983). *United States v. Khamis,* 674 F.2d 390, 392 (5th Cir.1982). Saenz and Garcia contend that the evidence is insufficient to support their conspiracy convictions because the Government has failed to prove an overt act by one of the conspirators.

■ The Government, in a conspiracy case, need not prove that a substantive crime was actually committed. Instead, the Government only needs to show some overt act by one of the conspirators taken in furtherance of the conspiracy. *United States v. Sutherland,* 656 F.2d 1181, 1186–87 n. 4 (5th Cir.1981), *cert. denied,* 455 U.S. 949, 102 S.Ct. 1451, 71 L.Ed.2d 663 (1982). The Government need show only that "at least one conspirator committed at least one overt act in furtherance of the conspiracy." *United States v. Fuiman,* 546 F.2d 1155, 1158 (5th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 176, 54 L.Ed.2d 127 (1977).

■ In the instant indictment, the Government alleged four overt acts. In one allegation, the Government alleged that Domitilla Garza and Norma Solis[12] offered Elizabeth Yarberry a food voucher if she would vote for Gilberto Uresti. Domitilla Garza was convicted on the substantive count that formed the basis for the alleged overt act. If the evidence is sufficient to support Garza's conviction on the substantive count, it is necessarily sufficient to establish the overt act that supports the convictions of Garza, Saenz, and Garcia on the conspiracy count. We have previously concluded that the evidence is sufficient to support Garza's conviction on the substantive count in Part I(a) of this opinion. As in *Fuiman,* the Government has shown that "at least one conspirator committed at least one overt act in furtherance of the conspiracy." 546 F.2d at 1158.

---

**10.** Record Vol. VI at 716–17.

**11.** Record Vol. VI at 716.

**12.** Norma Solis was acquitted on this substantive count.

 Saenz further argues that because Elizabeth Yarberry could not vote for Saenz because she lived in a different precinct, an overt act to buy her vote for Gilberto Uresti cannot be used to support a conspiracy conviction against Saenz. Saenz misapprehends the law of conspiracy. The Government is not required to prove that Saenz had knowledge of all the details of the conspiracy, provided the Government establishes his knowledge of the essentials of the conspiracy. *United States v. Alvarez*, 625 F.2d 1196, 1198 (5th Cir.1980) (en banc), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 324 (1981). *See United States v. Clark*, 732 F.2d 1536 (5th Cir.1984). There was testimony at trial from which the jury could infer Saenz's knowledge of this conspiracy. Rafaela Torrez testified that Saenz told her that two welfare vouchers were given to Torrez because of her vote.[13] Additionally, Josie and Manuel Arredondo testified that Saenz, while campaigning, offered to help Manuel Arredondo find a job and offered them a food voucher.[14] Saenz's argument that the overt act proven must have benefited him personally in his re-election bid is simply incorrect. From the testimony before the court, a reasonable juror could infer that Saenz knew that the essentials of the conspiracy involved buying votes with welfare vouchers.

 Domitilla Garza argues that the evidence was insufficient to show her knowing participation in the vote buying conspiracy. The Government must prove beyond a reasonable doubt that the defendant knew of the essential nature of the conspiracy and intended to join or associate with the objective of the conspiracy. *United States v. Fowler*, 735 F.2d 823, 826 (5th Cir.1984). *See United States v. Montemayor*, 703 F.2d 109, 115 (5th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). It is not necessary to prove that the defendant was familiar with every single detail of the conspiracy in order to prove intent, but the Government must show knowledge of the conspiratorial agreement and association with the plan. *United States v. Fernandez-Roque*, 703 F.2d 808, 814–15 (5th Cir.1983); *Fowler*, 735 F.2d at 826.

 Contrary to Garza's contentions, the evidence amply demonstrates her knowing participation in the conspiracy. First, Garza played a central role in soliciting Yarberry's vote. *See supra* Part I(a). In addition, Candula Torres, a former employee of the Duval County Welfare Office responsible for issuing vouchers during the pendency of this campaign, testified that during the primary campaign she discussed the distribution of welfare vouchers with Garza, Judge Uresti, and Amelia Garcia.[15] Moreover, Torres testified that Garza, on several occasions, referred to welfare recipients who were "all right" because they were voting the right way, and they should be "helped" by issuing vouchers to them.[16] From this testimony, the jury could infer that Garza knowingly participated in the conspiracy.

The Government has met its burden as to all three defendants (Saenz, Garcia, and Garza) on the conspiracy counts. Taking the evidence in the light most favorable to the Government, we conclude that a reasonable trier of fact could find that the

---

**13.** Torrez testified about the two vouchers she received as follows:

> Torrez: "Because they had already given them to me, right. And then he [Saenz] said—later he said that they were given to me because of my vote. And I told him I was not going to sell my vote for anybody."

Record Vol. IV at 420.

At an earlier visit from Saenz, Torrez testified that Saenz said:

> Torrez: "To please vote for him because if I didn't—what was I going to do if I didn't vote for him."

Q: What did you say?
A: I told him, no, I was not going to sell my vote, that if it was for the vouchers of the court, that I needed them, and I had always needed them, and they had been there for me.

Record Vol. IV at 418.

**14.** Record Vol. IV at 320–22, 401–04.

**15.** Record Vol. VI at 731.

**16.** Record Vol. VI at 736, 739–40, 753–54.

evidence establishes guilt beyond a reasonable doubt. *Bell*, 678 F.2d at 549.

## III. PROSECUTORIAL MISCONDUCT

Appellants contend that the prosecutor's conduct throughout the trial was so outrageous that this Court must reverse for prosecutorial misconduct. Appellants argue that the prosecutor (1) impermissibly vouched for the credibility of the Government's witnesses and the integrity of the prosecution, (2) sought to inflame the passions of the jury, (3) personally attacked the defendants by arguing that they showed contempt for the Government's witnesses and by intimating that defendants would intimidate the Government's witnesses once the case was over, and (4) attacked defense counsel for objecting at trial to the admission of evidence. This Court agrees with appellants that some of the prosecutor's remarks were improper, but we hold that the prosecutor's conduct was not so egregious that reversal is required.

█ In *United States v. McPhee*, 731 F.2d 1150, 1152 (5th Cir.1984), this Court recently reiterated the test for prosecutorial misconduct.

As the Supreme Court observed nearly a half century ago, the prosecutor "may prosecute with earnestness and vigor— indeed, he should do so. But while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed.2d 1314 (1935). To determine whether the prosecutor violated this rule, the reviewing court "must weight the degree to which the alleged improper argument may have affected the substantial rights of the defendants." *United States v. Rhoden*, 453 F.2d 598, 600 (5th Cir.1972). Pertinent factors include: (1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt. *Id.*

Allegedly improper prosecutorial comments must be considered in context when determining their propriety. *See United States v. Bursten*, 453 F.2d 605, 608 (5th Cir. 1971), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972); *United States v. Bright*, 630 F.2d 804, 824 (5th Cir.1980).

█ After reviewing the context of the prosecutor's remarks, we conclude that the majority of his questioned comments fall into the category of "invited response." *Lawn v. United States*, 355 U.S. 339, 359– 60 n. 15, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). *See, e.g., United States v. Shackelford*, 709 F.2d 911, 913 (5th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 253, 78 L.Ed.2d 239 (1983); *United States v. Bright*, 630 F.2d at 824. A prosecutor may respond in rebuttal to improper arguments by defense counsel, even though such a response might not be permissible in the absence of provocation.

This case was obviously hard fought by all parties. The closing arguments reflect this battle. One defense counsel argued that the prosecution had intimidated witnesses,[17] and coached witnesses like mechanics.[18] He argued that the prosecutor was unfair,[19] untruthful,[20] had "abused the

---

**17.** Defense counsel referred to the investigating officers in his closing argument:

And I'll tell you what. They come in here: "We didn't intimidate nobody. We didn't do anything wrong." Oh, no. We are sweet. Boy, we are the sweetest three guys you have ever seen.
Record Vol. VIII at 1265.

**18.** Defense counsel stated:

Each of these ladies couldn't hold up anything because they were coached. They were coached by Rudy Rodriguez [an investigating officer], by Bryan Marshall [an investigating officer] and Jack Wolfe [the prosecutor]. They were coached like mechanics.
Record Vol. VIII at 1277.

**19.** Defense counsel argued:

Look, he [the prosecutor] may strike hard blows. He may come to court. He has got to be fair. Olga Uresti is not being treated fairly in this case.
. . . .
... Norma Solis has not been treated fairly. Mr. Saenz has not been treated fair. Domi has not been treated fair. None of these people have been treated fair.
Record Vol. VIII at 1276.

**20.** See note 20 on p. 940.

system," [21] had attempted to hide an unfavorable exhibit at trial,[22] and had put people on trial who were not there to defend themselves.[23] He concluded with the following attack:

> I can't respond to Mr. Wolfe. He is a good lawyer. He is going to come up and say all kinds of things about me. I will tell you one thing, I am looking at him eyeball to eyeball and I'll tell you, Jack Wolfe, you were not fair with Olga Uresti.
>
> ... I am telling you right now, you played dirty in this case. And that's not right. You have abused your privilege as an Assistant United States Attorney. She is not guilty.

Record Vol. VIII at 1278.

Another defense counsel argued that the prosecutor was an "unfair man," [24] and also insinuated that the prosecutor was not acting in good faith.[25] Defense counsel asserted that the witnesses were "programmed," [26] while another argued that it was "very easy to get these people to admit something when they are being asked." [27] Defense counsel directly attacked the credibility of the Government's witnesses:

**20.** Defense counsel stated:
> Was he [the prosecutor] truthful with you on Consuelo? Was he truthful with you about the voting of Consuelo? Was he truthful about that?

Record Vol. VIII at 1275.

**21.** Defense counsel argued:
> I am mad because they have abused the system. They have abused it.

Record Vol. VIII at 1275.

**22.** Defense counsel argued:
> Consuelo H. Ramos showed him the voucher. He tried to hide it. But, see, it is already in evidence. I couldn't find it. He had it on his desk.

Record Vol. VIII at 1269.

**23.** Defense counsel argued:
> I am not here to defend Amelia. I am here to defend Olga. What he has done is put alot of people on trial. That's what Ramon was mad about. That's what he was trying to tell you in the beginning. He has put some people on trial [who] are not here to defend themselves. Not here to defend themselves.

I can't recall the evidence in this first case and I was taking notes, and you expect these ladies, who have been sick, who didn't make a mental notation, who don't know how to write their names, to remember, remember very clearly in their minds, *without coaching*, that something happened a year-and-a-half ago.

I am not trying to knock anybody down, but I will tell you one thing, they sure have some sharp minds around here. Those folks can remember a lot of things.

Record Vol. VIII at 1265–66 (emphasis added).

In light of these personal attacks on the prosecutor and the direct attacks alleging that the witnesses' testimony was programmed, the result of intimidation, and not credible the prosecutor's rebuttal statements, while not to be condoned, do not rise to reversible error.

In *United States v. Bright*, this Court stated the parameters of the rule forbidding counsel to personally vouch for the credibility of witnesses.

> While it is true a prosecutor may not vouch for the credibility of witnesses

Record Vol. VIII at 1273.

**24.** Unhappy because the prosecutor had saved his evidentiary discussion for his rebuttal time, defense counsel stated:
> Let me tell you how unfair this man [the prosecutor] is.
> ....
> But I hope you realize how unfair he is because he hasn't given me a chance to rebut anything.... That is how I am saying he is applying the system unfairly.

Record Vol. VIII at 1219.

**25.** Defense counsel argued:
> How can he [the prosecutor] in good conscience ask you to ... convict this man....

Record Vol. VIII at 1223.

**26.** Defense counsel argued:
> She [Consuelo Ramos] has been programmed.

Record Vol. VIII at 1268.
> He also argued that the prosecution had coached witnesses like mechanics. Record Vol. VIII at 1277.

**27.** Record Vol. VIII at 1225.

based on facts personally known to the prosecutor but not introduced at trial, ... that does not mean the prosecutor cannot argue that the fair inference from the facts presented is that a witness has no reason to lie.

... The prosecutor is not obliged to sit quietly while character assaults are made on his witnesses; he is entitled to argue fairly their credibility.

630 F.2d at 824 (citations omitted). Where defense counsel "attacks the prosecutor, [or] his witnesses, ... the prosecutor, as an advocate, is entitled to make a fair response in rebuttal." *United States v. Nanez,* 694 F.2d 405, 410 (5th Cir.1982); *United States v. Shackelford,* 709 F.2d at 913.

■ The appellants challenge the prosecutor's statement that the defense lawyers were better attorneys, and that if it was a contest between lawyers, the prosecutor would lose.[28] This is a direct response to defense counsel's statement that the prosecutor is "a good lawyer," who was going to tell them many things about the defendants and defense counsel.

■ The prosecutor continued by stating:

You know what I had going for me in this case, ladies and gentlemen? At one time I think there were seven attorneys plus three helpers. They had ten attorneys in the courtroom. Here was me.

Record Vol. VIII at 1279–80. Appellants rely on *United States v. Mack,* 643 F.2d

1119 (5th Cir.1981), for the proposition that this statement was improper. As in *Mack,* we agree that this statement was improper. As in *Mack,* however, we also find it does not mandate reversal. In both that case and the instant case, the jury was aware from the beginning of the trial that there were a number of defense lawyers in the courtroom. 643 F.2d at 1124. As we stated then, "While the prosecutor's remark falls somewhat short of the high level of evenhandedness expected of those responsible for prosecutions in United States courts, any error in the prosecutor's remarks was harmless beyond a reasonable doubt." *Id.* Moreover, this was a fair rejoinder to defense counsel's argument that the prosecutor had all the resources of the FBI and Texas Rangers at his disposal.[29]

■ In light of defense counsels' arguments that the Government's witnesses were coached, programmed, and intimidated, the prosecutor's statements vouching for his witnesses and asserting their bravery were fair responses. The prosecutor argued they were not programmed as demonstrated by their human mistakes,[30] and by their testimony that exculpated some of the defendants.[31] Defense counsel argued that the Government had intimidated its witnesses. In response, the prosecutor argued just the opposite, that the witnesses might be subject to as much or more intimidation at home.[32]

---

**28.** Record Vol. VIII at 1279.

**29.** Record Vol. VIII at 1234–35.

**30.** The prosecutor argued:
And mistakes. Oh, yes, there were mistakes in this trial. And you know, ladies and gentlemen, that means what my people told you was the truth, because they are all human beings like you and I.
Record Vol. VIII at 1280.

**31.** The prosecutor argued:
But they want you to think that Elena Cardenas is lying and that we put her up to it. If we put her up to it, don't you think we could have had her go that extra step further and say, "Well, didn't Rebecca say something? Didn't Rebecca do this, too?"

But she said, "No." She told you like it happened.
Record Vol. VIII at 1283. *See also* Record Vol. VIII at 1299.

**32.** The prosecutor argued:
These people [the defendants] aren't victims. The people who are victims are these poor people that came down here to tell you what happened.
You know, they are going to go back to Duval County. And when they go back to Duval County I am not going with them. I live in Edinburg and I work here in Brownsville. Bryan Marshall is from Corpus Christi and Rudy Rodriguez is from San Antonio and we are not going back to Duval County with these people.
If somebody deserves a medal for being brave, there are 18 brave people that came

Appellants further argue that the prosecutor suggested that defense counsel was attempting to confuse the jury and keep the truth from it by objecting to evidence.[33] They argue this amounts to reversible error. See *Houston v. Estelle*, 569 F.2d 372 (5th Cir.1978). We disagree. Defense counsel accused the prosecutor of hiding evidence.[34] The prosecutor merely countered the attack. Consequently, *Houston* is inapplicable. Moreover, the court stated to the jury that defense counsel must object in order to preserve issues for appeal.[35]

Appellants also argue that the prosecutor suggested that he only prosecuted the guilty.[36] The defense, however, had directly attacked the prosecutor's integrity in maintaining the prosecution, and had accused the prosecutor of abusing the system. The prosecutor's statement was made in defense of his decision to prosecute, which had been directly attacked. As such, it is not reversible error.

One remark by the prosecution bears further discussion. The prosecutor argued:

> Mr. Wolfe: You all have been working here every day this week and you have been going home every night and probably watched a little news and stuff. And you know there have been some events going on in the world that's pretty serious. You know that the Russians have been accused of shooting down a Korean jetliner. And I don't know how many innocent people died in that crash and everything else.
>
> But Friday night after I got home after the trial and I am watching the news and I am seeing what's going on and they are asking the Russians about it, and you know what the Russians are saying?

into this courtroom and they are going back into that same environment.
Record Vol. VIII at 1300.

**33.** Record Vol. VIII at 1283.

**34.** Record Vol. VIII at 1269.

> Mr. Canales: I object to counsel trying to characterize these Defendants as Russians or any type of analogy or anything like that.
>
> The court: Remember my instructions. Objection is overruled.
>
> Mr. Wolfe: What did the Russians say? "Well, it is not our fault. It is the Americans' fault."
>
> Just like these Defendants said, "We didn't do it. It is the Ranger's fault."
>
> Mr. Canales: I object to it again, Your Honor. Characterizing our clients as the Russians, Your Honor.
>
> The court: The objection is overruled.
>
> Mr. Wolfe: We then asked them about it, they said, "No, no, we didn't do it. We didn't have anything to do with that airplane being shot down." And they are blaming it on everybody else but themselves.

Record Vol. VIII at 1296–97.

The Government admits that this rhetoric was improper. We agree. Contrary to appellants' contentions, however, we do not find reversible error. As we stated in *McPhee*, we must weigh the degree to which the alleged improper argument may have affected the substantial rights of the defendants. 731 F.2d at 1152. To do so, we must look at (1) the magnitude of the prejudicial effect of the statements, (2) the efficacy of any cautionary instructions, and (3) the strength of the evidence of defendant's guilt.

First, we must determine the prejudicial effect of the statement on the jury. That the jury was not inflamed is demonstrated by the fact that one defendant was acquitted on all charges and three other defendants acquitted on at least one charge. This indicates to us that the jury carefully weighed the evidence against each defendant, acquitting when the evi-

**35.** Record Vol. I at 34.

**36.** The prosecutor stated:
You [the jury] are not in [the defendants'] shoes because you did not commit a crime.
Record Vol. VIII at 1303.

dence was insufficient. This reflects a logical approach to the deliberations, inconsistent with passion or prejudice. Second, the court repeatedly instructed the jury that the arguments of counsel were not evidence.[37] This Court has held that such an instruction is sufficient to protect a defendant's rights. *See United States v. Shackelford*, 709 F.2d at 913; *United States v. Shaw*, 701 F.2d 367, 391–92 (5th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 1419, 79 L.Ed.2d 744 (1983). Finally, the evidence sufficiently supports each conviction.

Moreover, the prosecution was responding to defense assertions that the prosecutor was abusing the system. In response, the prosecutor argued that such a line of attack was merely a way of passing the blame to the prosecutor and the investigators, in the same manner that the Russians tried to place the blame for the airliner attack on the Americans. The prosecutor's unfortunate comparison cannot be condoned, but it does not reach the level of reversible error when taken in context.

## IV. JURY INSTRUCTIONS

 To establish a violation of 42 U.S.C. § 1973i(c), the Government must prove beyond a reasonable doubt that there was an offer to pay or payment for registering to vote or voting and that the election involved was held in part for the purpose of selecting a candidate for federal office.

The statute provides:

*Provided, however,* That this provision shall be applicable only to general, special, or primary elections held solely or in part for the purpose of selecting or electing any candidate for the office of President, Vice President, presidential elector,

Member of the United States Senate, Member of the United States House of Representatives, Delegate from the District of Columbia, Guam, or the Virgin Islands, or Resident Commissioner of the Commonwealth of Puerto Rico.

42 U.S.C. § 1973i(c).

This Court has recognized that vote buying in a local election is covered by § 1973i(c) if candidates for federal office appear on the same ballot:

When candidates for federal office appear on the same election-day ballot with the local candidates who have been the target of illegal vote-buying activities, the Necessary and Proper Clause affords Congress ample power to regulate conduct in the pendant state election to exclude the possibility of tainting, distorting or otherwise unfairly affecting the results of a federal election.

*United States v. Garcia*, 719 F.2d 99, 102 (5th Cir.1983). *United States v. Bowman*, 636 F.2d 1003, 1011 (5th Cir.1981). *See United States v. Malmay*, 671 F.2d 869, 874–75 (5th Cir.1982). *Accord, United States v. Carmichael*, 685 F.2d 903, 908 (4th Cir.1982), *cert. denied*, 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983).[38]

 The district court recognized that the Government must prove that a federal election was involved in order to reach the conduct at issue here. The Government did so by introducing a copy of the ballot from the May 1, 1982, primary. In instructing the jury on the section 1973i(c) requirement of a federal election, the court stated that it did not think there was any question that federal candidates appeared on the May 1, 1982, primary ballot in Duval County.[39] In a supplemental instruction [40],

---

**37.** Record Vol. VIII at 1203, 1282, 1286, 1297, 1303.

**38.** Appellants contend this statute has been unconstitutionally applied in this case. Their contentions are without merit. *United States v. Garcia*, 719 F.2d 99, 102 (5th Cir.1983).

**39.** The court, in relevant part, instructed:
What you really have in Count 2 through 8, the substantive aspect of it, is that, well, it is

against the law, really it is against the law, to pay somebody or offer to pay somebody to vote for a candidate at an election in which somebody is running for Federal office. That element—that's one of the elements of the offense, too, the Federal offense. *I don't think there is any question about that.* Senator Benson [sic] and Kika De La Garza were running for Congress and Senate of the United States. So that element I don't think is in question. But what is in question, they are

**40.** See note 40 on p. 944.

the court stated that it was not in issue that federal candidates were on the May 1, 1982, primary ballot. The appellants argue that these instructions impermissibly directed a verdict as to an essential element of the offense. *See United States v. Burton*, 737 F.2d 439 (5th Cir.1984); *United States v. Johnson*, 718 F.2d 1317, 1320–21 (5th Cir.1983) (en banc). To direct a verdict in whole or in part is plain error.[41] *United States v. Brown*, 555 F.2d 407, 421 n. 31 (5th Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1977). *See Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 976, 74 L.Ed.2d 823, 832 (1983). We disagree with appellants' contentions that this instruction amounted to a partial directed verdict.

Appellants argue that two of the alleged solicitations raised the issue of which of several elections was the target of vote buying activities. Garza claimed that she contacted Yarberry about voting in a school board election, in which case, the ballot would not contain the name of a federal candidate. Defendant Garcia testified she took Alaniz to vote on only one occasion. That occasion involved Oscar Garcia's campaign in the runoff election, and there were no federal candidates on the ballot.

Appellants' claims fail for two reasons. First, at most, the trial court stated that it was not in issue that federal candidates' names appeared on the May 1, 1982, ballot.

That did not preclude appellants from arguing, or the jury from finding in any particular instance, that vote buying occurred in an altogether different nonfederal election from the May 1, 1982, primary. In fact, defense counsel so argued in closing argument. The court so instructed when it stated that "in order for this to be a violation of law somebody must have paid or offered to pay for a vote *at that election* ...."[42]

Furthermore, taking the court's instructions as a whole, it clearly instructed the jury that it must find that a federal election was involved. The charge included these instructions:

One, that it was a Federal—it was an election which somebody was running for Federal office. I don't think that's in issue.

Two, all right, that the defendant in his or her own right, or as I have defined it to you, okay, by aiding and abetting, paid or offered to pay a person for voting.

And, three, that it was done knowingly, or wilfully. Those are the three elements of the offense.

Now, as to Counts 2 through 8, *if you are not satisfied beyond a reasonable doubt that those three elements, all of them, are proven to your satisfaction,* as would regard each one of the allegations, ... if you are not satisfied by proof beyond a reasonable doubt that that person did that, as I have defined it

---

saying, look, in order for this to be a violation of law somebody must have *paid or offered to pay for a vote at that election* or helped somebody do just that ...

....

What are the elements of the offense? Well, I told you one of the elements of the offense has to be—and these things have to be proven in Counts 2 through 8, each one of them beyond a reasonable doubt to *your* satisfaction, because if they don't prove to your satisfaction beyond a reasonable doubt, then as you consider each one of the counts against any one of these defendants you cannot find them guilty.

One, that it was a Federal—it was an election which somebody was running for Federal office. *I don't think that's in issue.*

Record Vol. VIII at 1316–17, 1320 (emphasis added).

**40.** In a supplemental charge, the Court stated:

Remember Count No. 1 is prefaced like all the other counts but with the fact that at an election that took place on or about May 1, 1982, in Duval County for selecting candidates in which Federal candidates were also involved, *which is not in issue,* then a conspiracy—a conspiracy was engaged in by the defendants that are before you.

Record Vol. VIII at 1339 (emphasis added).

**41.** The appellants did not object at the time the charge was given. Consequently, the plain error rule applies.

**42.** Record Vol. VIII at 1316–17 (emphasis added).

to you, *then you should find them not guilty.*

Record Vol. VIII at 1320–21 (emphasis added).

▮ The court's statement that it was not in issue that federal candidates were on the ballot was no more than a comment on the evidence. Federal courts are allowed to comment on the evidence. As the Supreme Court stated:

It is within [the trial judge's] province, whenever he thinks it necessary, to assist the jury in arriving at a just conclusion by explaining and commenting upon the evidence, ... provided he makes it clear to the jury that all matters of fact are submitted to their determination.

*Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 699, 77 L.Ed.2d 1321 (1933). *United States v. James,* 576 F.2d 223 (9th Cir.1978).

▮ We find that the court was merely commenting on the weight of the evidence. The court clearly instructed the jurors that they were to be the only fact finders and that they must find all three elements of this offense were proven beyond a reasonable doubt. Furthermore, the court instructed the jury to disregard anything that might cause them to believe the Judge had an opinion in the case. The court's instructions, taken as a whole, were not plain error.

## V. EVIDENTIARY CLAIMS

▮ Appellant Garcia claims that the court admitted prejudicial hearsay statements over objection, and admitted documentary evidence without a proper predicate. Garcia also contends that the court improperly allowed testimony by Alba Garcia that she was convicted of vote buying for the opposition party. We find, after considering each of these issues, that no substantial right of the defendants is affected, and therefore any error is harmless error. *See* Fed.R.Evid. 103(a)(1). Appellant Garza's contention that the court did not make the appropriate findings under *United States v. James,* 590 F.2d 575 (5th Cir.) (en banc), *cert. denied,* 442 U.S.

917, 99 S.Ct. 2836, 61 L.Ed.2d 283 (1979), or *United States v. Robinson,* 700 F.2d 205 (5th Cir.1983) are without foundation. We have considered all other arguments by appellants and find no error.

## VI. CONCLUSION

The evidence is sufficient to support each conviction. Additionally, any improper prosecutorial conduct did not rise to the level of reversible error. The district court's instructions preserved each element of the offense charged. Finding no reversible error, the judgment of the district court is

AFFIRMED.