UNITED STATES of America,
Plaintiff-Appellee,

v.

Gerardo Adolf VILLARREAL, a/k/a
Jerry, Defendant-Appellant.

No. 84–1847.

United States Court of Appeals,
Fifth Circuit.

June 20, 1985.

Rehearing Denied Aug. 16, 1985.

Charles T. Conaway, Charles J. Lieck, Jr., San Antonio, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., J.W. (Bill Blagg), Asst. U.S. Atty., San Antonio, Tex., Vincent L. Gambale, Maury S. Epner, App. Sec., Crim.Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before BROWN, POLITZ and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

This case is an appeal by a lieutenant in the sheriff's office of Bexar County, Texas, from a criminal conviction under the Hobbs Act, 18 U.S.C. § 1951, for conspiracy to extort protection money from operators of massage parlors in the San Antonio, Texas, area. Because we find sufficient evidence to support the conviction, and in addition find no reversible error, we affirm.

## I

The defendant-appellant Villarreal was hired as a lieutenant in the Bexar County sheriff's office by Joe Neaves soon after Neaves took office as the newly elected sheriff in January 1981. In that position Villarreal had only three superiors: Neaves, an assistant chief, and Chief Deputy Manuel Arcos.

Villarreal was indicted for violation of the Hobbs Act, 18 U.S.C. § 1951,[1] as well as with various substantive offenses. The government charged that Villarreal had conspired with Thomas Chavana to extort money from "massage parlor" operators. This conspiracy was alleged to have begun about March 1981, and extended to about October 1981. Chavana, a lieutenant in the sheriff's office, was involved by way of his official obligations in the enforcement of municipal regulation of "massage parlors,"

---

1. Section 1951 states in pertinent part:

(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

. . . .

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

which were actually thinly veiled houses of prostitution. Chavana admitted to conspiracy with his then supervisor Alfred Carreon to extort "protection" money from the various massage parlors in the San Antonio area. Evidence was presented indicating the conspiracy with which Villarreal was charged overlapped the Chavana/Carreon conspiracy to some extent.

The evidence adduced at trial, which is discussed in more detail below, indicated that Chavana was primarily responsible for collecting payments from massage parlor operators, but that Villarreal would sometimes accompany him to the massage parlors at the times the payments were made. In particular, Florence Reidel, the operator of one parlor, gave testimony which, interpreted in the light most favorable to the government, indicates that she was told by Chavana in Villarreal's presence that she could make payments to Villarreal if the need arose. Moreover, C.B. Moore, the owner of another parlor testified that Villarreal and Chavana visited him and that Chavana solicited money from Moore. Villarreal left the room. Moore refused to pay and his establishment was subsequently raided by the sheriff's department. Shallotte Slade, another parlor operator, testified that Chavana solicited money from her in one room of her massage parlor while Villarreal waited in another. Slade also refused to pay and was subsequently arrested by members of the sheriff's department. Following a jury trial, Villarreal was acquitted on all but the conspiracy count of 18 U.S.C. § 1951. Villarreal was sentenced to five years in prison. He appeals from this conviction and sentence, alleging insufficiency of evidence and various reversible errors in his trial.

## II

■ Villarreal challenges the admissibility of out-of-court statements of Chavana which were admitted by the trial court as statements of an alleged co-conspirator

made in the furtherance of the conspiracy. *See James v. United States*, 590 F.2d 575 (5th Cir.1979) (en banc). *James* permits the use of such statements of alleged co-conspirators where a preponderance of the evidence other than the out-of-court statements indicates that the conspiracy existed, that the defendant and the alleged co-conspirator were members of it, and that statements were made in the course of and in furtherance of the conspiracy. *James* at 583. In these circumstances the out-of-court statements are not hearsay. *Id.;* Fed.R.Evid. 801(d)(2)(E). Because the trial court's determination that the out-of-court statements were made in the course of and in furtherance of an ongoing conspiracy of which Villarreal was a member, is supported by the evidence, we hold that to admit the hearsay statements was not an abuse of the trial court's discretion.

Considering an appeal from a criminal conviction, we must interpret the evidence in the light most favorable to the government. Viewed in this light, independent evidence supporting the *James* determinations made by the district court is substantial. First, Villarreal accompanied Chavana on visits to the massage parlors during which Chavana solicited money from massage parlor personnel. Reidel, the manager of Belle's massage parlor, gave testimony which a reasonable jury could interpret as asserting that in June 1981 Villarreal once waited in the car outside Belle's while Chavana entered and solicited money.[2]

C.B. Moore, the manager of the Moonshine Spa and the Puss & Boots Theatre, testified that Villarreal and Chavana visited him in 1981 and that Villarreal left the room and Chavana solicited money from Moore. Moore refused to pay, and a few days later Villarreal and Chavana participated in a "raid" on the Puss & Boots Theatre.

Shallotte Slade, owner of the Pleasure Place massage parlor, testified that in the summer of 1981 Villarreal waited in one

---

2. The "verbal act" of solicitation itself does involve hearsay. *United States v. Burke*, 495 F.2d 1226 (5th Cir.1974).

room of her establishment while Chavana solicited money from her in the next. Slade also refused to pay and was soon arrested.

Second, Villarreal's own testimony indicated that he had substantial authority in the sheriff's office; indeed, he was in charge of the office between 5:00 p.m. and 1:00 a.m. His failure to use his authority to investigate Chavana's actions helps to support the conclusion that Villarreal and Chavana were parties to a conspiracy.

Third, Chavana testified that he gave Villarreal money in August 1981, telling him that the money came from the massage parlors.

Fourth, Chavana testified that massage parlors were making payments to members of the sheriff's office as early as April 1981.

The foregoing independent evidence is sufficiently substantial to fully support the trial court's *James* determinations. Accordingly, out-of-court statements made by Chavana after implicating Villarreal were properly admitted into evidence.

### III

■ The evidence adduced at trial, including the out-of-court statements admitted under *James*, is sufficient to support Villarreal's conspiracy conviction. To convict for criminal conspiracy "the jury must find 'an agreement between two or more persons to commit a crime, and an overt act by one of the conspirators to further the conspiracy.'" *United States v. Lyons,* 703 F.2d 815, 822 (5th Cir.1983) (quoting *United States v. Khamis,* 674 F.2d 390, 392 (5th Cir.1982)).

There is no question that Chavana committed many criminal "overt acts" in extorting money from the massage parlor operators. Moreover, there is evidence sufficient to allow a reasonable trier of fact to conclude beyond a reasonable doubt that Villarreal and Chavana entered into an agreement to extort money from the massage parlor operators, pursuant to which Chavana performed his "overt acts."

*United States v. Saenz,* 747 F.2d 930, 938 (5th Cir.1984). As in the above analysis, we must again construe the evidence in the light most favorable to the government. *Id.*

Reidel testified that during the visit to Belle's massage parlor, Chavana asked Reidel to come outside and meet Villarreal who was waiting in the car. After introducing Reidel to Villarreal, Chavana said to Reidel that she could make payments to Villarreal if the need arose. Reidel testified that Chavana made this statement within Villarreal's hearing, and that he did not object.

■ Villarreal now argues that this out-of-court statement of Chavana should be excluded as hearsay; we do not agree. As already mentioned above, the trial court did not err in admitting this statement under the authority of *James.* However, even if *James* did not apply, we could not now disallow its introduction. Villarreal did not object to the introduction of this statement at trial; accordingly, we must review its admission under the "plain error" standard. *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592, 71 L.Ed.2d 816 (1982). Villarreal's failure to disagree with Chavana's statement at the time it was made to Reidel could reasonably be taken as indicating his adoption of it; the admission of the statement might therefore reasonably be permissible as an admission of a party under Fed.R.Evid. 801(d)(2)(B) (and accompanying committee notes). Thus, the inclusion of Chavana's statement cannot be characterized as "plain error."

In addition to the previously recounted testimony, Sandra Bowen, an owner of the Omega Spa parlor, testified that Villarreal accompanied Chavana on a trip Chavana made to collect money from that parlor; again, Chavana collected and Villarreal remained outside in the car. This was in October 1981. Villarreal also accompanied Chavana on inspections of the Omega Spa, according to Bowen.

John Falvey, who owned property on which another parlor operated, testified

**1052**

that Chavana solicited money from that establishment, and that Chavana later met him at a party and explained: "You know, about this money I'm getting ... it's not just me.... I got to spread it around."

C.B. Moore testified that when Chavana and Villarreal visited him in the summer of 1981 Chavana turned to Villarreal and said, "Do you want to talk to him?" and Villarreal responded, "No, you talk to him." At that point Villarreal left the room and Chavana proceeded with the solicitation.

Finally, in both September and October of 1981, the FBI videotaped Chavana collecting money from Reidel. On one of these videotapes Chavana states that because Slade refused to "pay up," he executed warrants against her. As already noted above, Slade testified that Chavana asked her to "pay up" while Villarreal waited in another room of Slade's parlor. Later Slade was arrested. Under *James*, all of the above evidence was properly received.

The evidence would certainly permit a reasonable jury to conclude beyond a reasonable doubt that Villarreal and Chavana reached an agreement to extort money from massage parlor operators with Chavana playing the role of the more active partner. Accordingly, we cannot set aside this conviction on the grounds of insufficiency of the evidence.

**IV**

■ Villarreal also asserts that the acts involved in this case did not sufficiently involve interstate commerce as required by 18 U.S.C. § 1951 (the Hobbs Act). However, "[t]he Hobbs Act only requires a minimal interference with interstate commerce." *United States v. Sorrow*, 732 F.2d 176 (11th Cir.1984). The massage parlors here used credit cards whose bills were sent through interstate mails. Products such as alcohol were also involved in interstate commerce. Accordingly, Villarreal's argument is without merit.

**V**

■ Villarreal contends that the district court committed reversible error in failing to expressly instruct the jury that it could acquit as well as convict Villarreal on the basis of the testimony of the massage parlor operators who, Villarreal asserts, could have been found by the jury to have been accomplices in the conspiracy charged. However, there is no evidence that the victims of this conspiracy were, in fact, accomplices. Therefore, even in the unlikely event that it was error to fail to give the requested instruction, the error was harmless.

Villarreal's reliance on *Cool v. United States*, 409 U.S. 100, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972) and *United States v. Stulga*, 531 F.2d 1377 (6th Cir.1976), is misplaced. In *Cool*, the Court found that because of the peculiar phrasing of a jury instruction, the jury was, in effect, erroneously instructed to disregard an accomplice's exculpatory testimony *unless* the jury found the testimony credible beyond a reasonable doubt. No such erroneous instruction was given here.

*Stulga* also turned on its peculiar facts. In that case a wealth of exculpatory testimony and virtually no inculpatory evidence was offered by accomplices. Nevertheless, the trial court instructed the jury that it could convict on the basis of the accomplice testimony, but did not instruct the jury that it could acquit on the basis of this testimony. On the facts and the peculiar circumstances of that case, the Tenth Circuit held that the trial court's refusal to instruct as to the exculpatory testimony could have had the effect of instructing the jury to discount it. In the present case there is no wealth of exculpatory testimony nor a paucity of inculpatory testimony, nor has anything else in the jury charge been brought to our attention which would allow "the jury to convict despite its failure to find guilt beyond a reasonable doubt." *Stulga* at 1380 (quoting *Cool*, 93 S.Ct. at 356). We conclude therefore that the trial court did

not abuse its discretion in regard to this jury instruction.

## VI

Finally, Villarreal objects to the testimony of Chavana's wife that several members of the sheriff's office, including Sheriff Neaves, made payments to her after her husband was incarcerated. These payments at least raise the possibility that sheriff's department officials other than Chavana and Villarreal were involved in the conspiracy, and made payments to Chavana's wife in order to cause Chavana to temper his testimony. However, Villarreal did not make such a payment to Mrs. Chavana, and he therefore argues that the testimony as to these payments was inadmissible, since they concededly occurred after the date the indictment states the conspiracy ended. However, that officers in the sheriff's department made payments to Chavana's wife after his arrest is relevant to the issue of whether the conspiracy charged in the indictment ever existed. "[A]cts by others ... before or after the conspiracy may be relevant in suggesting the existence ... of the conspiracy." *United States v. Testa*, 548 F.2d 847, 851 (9th Cir.1977) (collecting cites). The trial court expressly instructed the jury that it was to consider the testimony only to determine if the conspiracy charged in the indictment existed at the time charged in the indictment. That the evidence suggests that the conspiracy may have involved persons in addition to those charged in the indictment does not destroy its relevance as to the smaller conspiracy. Accordingly, the trial court did not abuse its discretion in admitting this testimony.

## VII

We have concluded that the evidence in this case is sufficient to support Villarreal's conviction on the conspiracy charge under 18 U.S.C. § 1951. Moreover, having found no reversible error in the trial, we affirm the conviction.

AFFIRMED.