**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-20730
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

RANDALL L. GARRETT,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas
H-98-CR-169-1
_____
November 1, 2000

Before DAVIS, EMILIO M. GARZA, Circuit Judges, and POGUE, U.S. Court of International Trade.

W. EUGENE DAVIS, Circuit Judge:[*]

In May of 1998, Randall Garrett ("Garrett") and Bryan Sims ("Sims") were indicted on multiple charges of mail fraud, wire fraud, money laundering, and conspiracy, in violation of 18 U.S.C. §§ 371, 1341, 1343, 1956(h), 1956(a)(1)(A)(i), 1956(a)(1)(B)(i), 1956(a)(2)(A), and 1956 (a)(2)(B)(i). Sims entered a guilty plea and testified for the government. Garrett was tried and convicted on all counts. He now appeals. For the reasons that follow, we AFFIRM the judgment of the trial court.

---

[*]Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

## I.

Viewing the facts in a light favorable to the verdict, the jury was entitled to find the following: Garrett and Sims met in January of 1996 at a business conference. Garrett told Sims that he had engaged in a trade program, could not get investors' money back, and needed money fast. Sims agreed to furnish this money to Garrett on condition that Garrett participate with Sims in a scam with investors. Sims' Test., R. Vol. 6-875-881, 6-899. Garrett and Sims agreed to the following arrangement: Garrett would induce investors to participate in a "trade program" by promising them a 240% return on their investment in one year. Garrett would then send the investors' money on to Sims. After deducting his share of the proceeds, Sims would send the money back to Garrett. Sims' Test., R. Vol. 6-879.

## II.

Garrett's principal argument on appeal is that the evidence at trial was insufficient to show that Garrett knew the "trade program" was not an actual investment. Garrett contends that Sims "fooled everyone" about the legitimacy of the investment, including him.

Sims' testimony is the primary focus of Garrett's insufficiency argument; he contends not only that Sims' testimony was not credible, but also that it was incredible as a matter of law. The primary basis for this argument is that Sims had difficulty explaining the exact nature of the illegal agreement he had with Garrett. However, this Court has held that a witness'

2

testimony does not rise to the level of being incredible simply because it is confused and conflicting. Rather, conflicts within a witness' testimony are to be resolved by the jury. <u>United States v. Saenz</u>, 747 F. 2d 930, 936 (5th Cir. 1984). This Court does not weigh the evidence and recognizes the jury's freedom to pick and choose among reasonable constructions of the evidence. <u>United States v. Brown</u>, 217 F. 3d 247, 254, n. 4 (5th Cir. 2000). The jury here had ample opportunity to evaluate the credibility of both Sims and Garrett at trial, and was entitled to reject Garrett's contention that he had no knowledge of an illegal scheme. Sims' "confused" testimony does not rise to the level of being incredible as a matter of law.

In addition to Sims' testimony, the government presented a strong case in support of its contention that Garrett was fully aware of the illegal scheme. The bank records produced at trial corroborated Sims' testimony about the Ponzi scheme. These records established that Garrett deposited the investors' funds and wired them to Sims. Most of the funds were then wired back to Garrett a few days later. In all, Garrett received back almost $13,000,000 of the $17,500,000 that he sent to Sims. Additionally, the testimony of the victims of the scam established numerous false promises and representations Garrett made to keep victims "off his back" and in the program. For instance, Garrett refused to provide certain information about the "trade program", claiming that it was "proprietary information". He falsely informed one investor that he had actually met the nonexistent "traders" in England. Garrett

3

told one investor that the "minimum investment" was $50,000, told another it was $100,000, and told still another that it was $1,000,000. Based on the documentary evidence and the testimony of the investors -- which fully corroborated Sims' testimony -- a reasonable jury could have found that Garrett knew that the "trade program" did not exist and that he and Sims were engaged in a classic Ponzi scheme. We therefore reject Garrett's argument that the evidence presented at trial was insufficient to support his conviction.

III.

Garrett next argues that the district court erred in permitting Special Agent Vanessa Walther of the FBI, a specialist in white collar crime, to testify about summaries she prepared from voluminous bank records admitted into evidence. We review the decision to permit such testimony for abuse of discretion. United States v. Duncan, 919 F. 2d 981, 988 (5th Cir. 1990).

The essence of Garrett's argument is that the district court improperly allowed expert accounting testimony from a lay witness. Walther was not qualified as an expert, and Garrett therefore contends that she should not have been permitted to give opinions. However, the record reveals the fundamental flaw in this argument: Walther gave no expert opinions. She merely added up figures from bank statements and followed deposits and withdrawals from bank account to bank account. Therefore, the district court did not abuse its discretion in allowing Walther's testimony.

IV.

4

Finally, Garrett argues that the district court erred in denying his motion for new trial based upon extrinsic evidence tainting the jury's verdict.  Denial of such a motion is reviewed for abuse of discretion.  United States v. Freeman, 77 F. 3d 812, 815 (5th Cir. 1996).

In support of his motion for new trial, Garrett presented the affidavit of juror Mary Adams, who stated under oath that three jurors were strongly biased against Garrett simply because he had worked for the A.L. Williams Insurance Company.  All three jurors had a bad experience with the insurance company and told their fellow jurors about these experiences.  Garrett argues that the jurors' introduction of this unfavorable information to the rest of the jury tainted the jury's deliberations and the district court erred in refusing to grant him a new trial.

To overcome the presumption of juror impartiality, Garrett must first demonstrate that an "extrinsic factual matter" tainted the jury's deliberations.  United States v. O'Keefe, 722 F. 2d 1175, 1179 (5th Cir. 1983).  He has failed to do so here.  An "outside influence" such as a "statement made by a bailiff to the jury, the introduction of a prejudicial newspaper account into the jury room, or a threat to the safety of a member of the jury's family" may taint the jury's deliberations and require a new trial. Peveto v. Sears, Roebuck & Co., 807 F. 2d 486, 489 (5th Cir. 1987).  However, juror discussion of personal past experience is not "extrinsic" evidence that requires a new trial.  See, e.g., Fed. R. Evid. 606(b); Peterson v. Wilson, 141 F. 3d 573, 577-78 (5th Cir.

5

1998).  The district court did not abuse its discretion in denying Garrett's motion.

V.

For the reasons stated above, we AFFIRM the judgment of the district court.