UNITED STATES of America,
Plaintiff-Appellee,

v.

Stanley Phillip MACK,
Defendant-Appellant.

No. 79–5481.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 27, 1981.

Gerald H. Goldstein, Mark Stevens, San Antonio, Tex., Vincent Perini, Tom Mills, Dallas, Tex., Michael Stepanian, San Francisco, Cal., for defendant-appellant.

Rebecca Gregory, Paul Coggins, Asst. U. S. Attys., Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH, CHARLES CLARK and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Stanley Phillip Mack appeals his conviction by a jury on three counts of violating laws relating to controlled substances. Under Count I, he was convicted of conspiring to distribute cocaine and to possess cocaine with intent to distribute it, in violation of 21 U.S.C. § 846. Under Counts II and III respectively, he was convicted of distributing cocaine and hashish, these counts brought under 21 U.S.C. § 841(a)(1).

On appeal, he urges (1) that to rebut his entrapment defense, the court admitted evidence of another sale of drugs by him which took place after the commission of the offenses charged in the indictment, (2) that the prosecutor made references to his lawyers in closing argument in such a way as to penalize him for exercising his Sixth Amendment right to counsel, (3) that the prosecutor in opening argument expressed his own personal view of the merits of the government's case, and (4) that the prosecutor made reference to "sting" operations in questioning a witness so as to cause the jury to make prejudicial assumptions about his claim of entrapment. We find Mack's contentions on appeal without merit and affirm his convictions.

## FACTS

The evidence reveals that a confidential informant of the Drug Enforcement Administration (DEA), Danny Lee "Goober" Harris, introduced DEA agents Alphin and Schmidt to one Jim McFarland. Alphin and Schmidt, posing as potential drug buyers, were introduced to McFarland in a trailer house in Poolville, Texas, on November 10, 1978. During this meeting, McFarland left the house and returned a short time later with defendant Mack. Mack told the undercover agents that he had just returned from san Francisco where he had purchased a small amount of cocaine and that he would sell the drug for $100 per gram. The agents bought approximately five grams. Mack told Alphin and Schmidt that he could get them all the cocaine they could buy, and the parties agreed that further contacts between Mack and the agents would be made through Goober Harris. McFarland was no longer involved in the dealings in this case after the original meeting of November 10.[1]

Harris arranged a second meeting on November 30, 1978, at a cafe in Weatherford, Texas. At this time Alphin told Mack that he and Schmidt wanted to by a large quantity of cocaine. Mack replied that he normally did not traffic in cocaine but that his source could furnish as much as they wanted at $2,200 an ounce. Mack also said he had made a great deal of money selling marijuana and hashish and he once had sold fifty pounds of hashish for $50,000. He told the agents at this second meeting that his annual income from dealing in drugs was between $30,000 and $50,000.

On December 7, 1978, again in Weatherford, Texas, the agents and Mack had their third meeting. At this rendezvous, Mack sold Schmidt a pound of hashish and told Alphin that he saw no problem with Alphin buying large quantities of cocaine on a continuing basis.

The final meeting between Mack and the agents occurred on December 16, 1978, at a truck stop near Fort Worth. At this meeting, Mack sold Alphin and Schmidt two ounces of cocaine. This final meeting took place in the Eastern District of Texas,

---

1. McFarland was convicted with Mack under Count I of conspiring to distribute and distributing cocaine and possessing cocaine with intent to distribute. He was acquitted under Count II, and was not charged under Count III. He is not a party to this appeal.

whereas the earlier three meetings had taken place in the Northern District of Texas. Mack was indicted in the Northern District of Texas for distributing the five grams of cocaine on November 10 and the one pound of hashish on December 7. The conspiracy count alleged that the conspiracy existed from November 1 until November 10.

## ENTRAPMENT AND THE EXTRINSIC OFFENSE EVIDENCE

Mack maintains that he was the victim of entrapment. He testified that his livelihood came from chicken-raising and cock-fighting, and that he possessed small quantities of cocaine but only for the purpose of conditioning his cocks during fights. He denied having distributed cocaine to anyone prior to November 10, 1978, and insisted that he had made the November 10 sale only because of Harris' persistent request that he do so.

█ Absent the raising of an entrapment defense, a prosecutor ordinarily may not prove that a defendant was predisposed to commit the crime with which he is charged. But once a defendant submits some evidence which raises the possibility that he was induced to commit the crime, the government to counter this evidence must prove beyond a reasonable doubt that the defendant was predisposed to commit it. *United States v. Grassi*, 616 F.2d 1295 (5th Cir. 1980).

In order to rebut the entrapment defense, the prosecution offered the evidence of the December 16 sale of two ounces of cocaine at the truck stop near Fort Worth. Mack admitted this sale on cross-examination, testifying he had told the agents that if they bought cocaine by the pound from his source he would receive $3.00 per gram. The admission of this evidence raises the specific question of whether the evidence of

a subsequent, extrinsic offense is admissible to prove disposition to commit a criminal act.

Mack urges that *United States v. Boyd*, 595 F.2d 120 (3rd Cir. 1978), stands for the proposition that subsequent acts may not be used to prove knowledge, intent, plan or scheme. But in the *Boyd* case, the subsequent criminal acts were introduced to show a prior conspiracy. The court recognized that the law already had been established allowing subsequent acts to be introduced to counter an assertion of entrapment. *United States v. Warren*, 453 F.2d 738 (2nd Cir. 1972), *cert. denied*, 406 U.S. 944, 92 S.Ct. 2040, 32 L.Ed.2d 331 (1972).

The Fifth Circuit recognized the same rule in *United States v. Rodriguez*, 474 F.2d 587 (5th Cir. 1973). In a situation similar to that involving appellant, Rodriguez was charged with possession of cocaine with intent to distribute and with distribution of cocaine. He claimed entrapment. To rebut this defense, the government offered evidence showing that Rodriguez had sold cocaine twenty days after the commission of the offenses with which he was charged. This Court approved the admission of the subsequent-act evidence and said that "prior or subsequent incidents may be introduced to establish that a defendant possessed a requisite knowledge or that there is a consistent pattern, scheme of operations, or similarity of method, . . ." 474 F.2d at 590. *See also* cases collected in annot., 61 A.L.R.3d 293, 319–324 (1975).

█ The only unresolved question relating to this issue is whether the enactment of the Federal Rules of Evidence in 1975 "overruled" *Rodriguez*. Mack contends that the admission of evidence relating to the December 16 incident violated Rules 401,[2] 403,[3] and 404(b)[4] of the Federal Rules

---

2. Fed.R.Evid. 401 provides:

   "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

3. Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

4. Fed.R.Evid. 404(b) provides:

of Evidence. We conclude that the *Rodriguez* holding survives and that the district court did not breach any of the Federal Rules.

The evidence relating to the December 16 cocaine sale was offered to prove that Mack intended to commit the crime with which he was charged and therefore was admissible under Fed.R.Evid. 404(b). The evidence fairly rebutted Mack's claim that absent Harris' persistent entreaties he would not have been of a mind to commit the crimes with which he was charged.

The admission of the evidence was proper under the guidelines established in *United States v. Beechum*, 582 F.2d 898 (5th Cir. 1978) (en banc), for the admission of extrinsic offense evidence. In *Beechum*, we held that such evidence must be analyzed under a two-step test:

> First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [Fed.R.Evid.] 403.

582 F.2d at 911. As explained above, the evidence relating to the December 16 sale was relevant to Mack's intent, an issue other than "mere character." *Id.* at 910.

The significance of the use of the phrase "mere character" by the Court in the *Beechum* case obviously stems from the inescapable circumstance that any evidence of an extrinsic offense has some impact in revealing the character of the accused. But the evidence of the December 16 sale of cocaine also showed a specific propensity to commit the particular crime of the sale of drugs. Despite Mack's protest to the contrary, the evidence showing that he had engaged in the December 16 drug sale, even though that sale occurred after the incidents for which he was tried, did have a tendency to

make it more probable that he was predisposed to commit the original offense charged, the sale of November 10. Contrast *United States v. Daniels*, 572 F.2d 535 (5th Cir. 1978), holding a later arrest for possessing a sawed-off shotgun was not relevant to prove predisposition earlier to commit the crime of distribution of heroin.

Having established that such evidence is relevant, we then turn to Mack's contention that the prejudice to him greatly outweighed the probative value of the extrinsic-offense evidence.

Mack argued that his sale of five grams of cocaine on November 10 was his first such crime. He testified that he was entrapped because he sold the cocaine only because of the persistent entreaties of Harris. Yet it was of significance that five weeks after selling the five grams of cocaine and one week after selling the pound of hashish, he sold two ounces of cocaine, more than ten times as much as he had sold the first time. While Mack's sale of only five grams of cocaine on November 10 might be consistent with his claim that he had access to only enough of the drug to use in training his cocks, the jury was entitled to evaluate his story in light of his subsequent sale of two ounces.

We stress the very careful instructions of the district court, limiting the effect of this testimony to avoid prejudicial impact. The court told the jury:

> During the course of this trial certain evidence has been presented concerning an alleged transaction similar to that charged in the Indictment, to wit, the distribution by the Defendant, Stanley Mack, of two ounces of cocaine, a Schedule II narcotic drug controlled substance on or about December 16, 1978.
>
> This evidence, if you choose to accept it, is admitted for the limited purpose of assisting you in determining the intent with which a Defendant may have acted.

---

Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible

for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

In this regard, you are instructed that evidence of an alleged similar transaction may not be considered by the jury in determining whether an accused committed the acts or participated in the activity alleged in the Indictment.

Nor may evidence of such an alleged similar transaction of a like nature be considered for any other purpose whatever unless the jury first finds that the other evidence in the case, standing alone, establishes beyond a reasonable doubt that the accused participated in the activity alleged in the Indictment.

If the jury should find beyond a reasonable doubt from other evidence in the case that the accused participated in the activity alleged in the Indictment, then the jury may consider evidence as to transactions of a like nature, in determining the state of mind or intent with which the accused did the act charged in the Indictment.

I want to instruct you very explicitly and unequivocally as to the very limited extent to which you are to consider this evidence as to a similar offense.

As I just instructed you, you may consider such evidence of another transaction of a like nature in determining the state of mind or intent with which the accused may have done the act charged in the Indictment, but only if you first find that the other evidence standing alone establishes beyond a reasonable doubt that the Defendant committed the act alleged in the Indictment.

The Defendants are not on trial for any act or conduct not alleged in the Indictment . . . .

Our decision today is consistent with the well established law prior to the Federal Rules of Evidence enacted in 1975, and is equally consistent with those rules as carefully applied in our thorough en banc opinion in *Beechum.* We must conclude the district court did not commit error in allowing evidence of the December 16 sale of cocaine to counter appellant's claim of entrapment in the sale of November 10.

## PROSECUTORIAL REFERENCE TO DEFENSE COUNSEL AS INTERFERENCE WITH RIGHT TO COUNSEL

Mack claims that his conviction should be reversed because of the following exchange that occurred during the prosecutor's, Mr. Wuester's, closing argument:

MR. WUESTER: I wonder what you might think about a country boy going out there on November 10, 1978, with his blue jeans on and just a big wad of money in his pocket, he's got his battery of people helping here in the Courtroom? Is he just a poor old country boy, or just a sly old fox?

MR. GOLDSTEIN: We object to Counsel's referring to his Counsel as a battery of lawyers. It's a trite phrase, and it's an attempt to castigate the Defendant because he has legal counsel representing him, your Honor. We would object to that phrase.

THE COURT: All right. Objection overruled.

MR. WUESTER: Counsel from both Dallas and San Antonio.

MR. GOLDSTEIN: You honor, again, we'll object to Counsel . . .

THE COURT: Okay, you can have your objection. The jury can see all the lawyers and witnesses and so forth.

Mack's trial was held in Fort Worth, Texas, approximately thirty miles from Dallas and approximately 260 miles from San Antonio. He was represented by three lawyers.

Mack argues that the prosecutor referred to the "battery of people helping here in the Courtroom" and to "counsel from both Dallas and San Antonio" in order to prejudice the jury against him and that therefore he was penalized for exercising his Sixth Amendment right to counsel.

We agree that the comment was inappropriate. Reversal, however, is not in order. During voir dire, the court introduced the defense counsel to the jury panel, and one of the lawyers told the jury that he was from San Antonio, the further away of the two cities involved. We perceive no

improper inference that the jurors could draw from the knowledge that Mack had retained lawyers from other cities in Texas.

Any inference that the jurors may have drawn based on the prosecutor's comment as to the number of lawyers representing Mack does not require reversal. As the district court pointed out, the jury was aware from the beginning of the trial that Mack had three lawyers assisting in his defense.

The fact that Mack's three lawyers were in the courtroom participating in the defense in the presence of the jury throughout the trial distinguishes this case from *United States v. McDonald*, 620 F.2d 559 (5th Cir. 1980). Mack argues *McDonald* stands for the proposition that there is a deprivation of a right to counsel in his case. But in *McDonald*, the prosecutor brought out in evidence and argument the fact that McDonald was represented by the presence of his attorney at the time a search warrant was executed on his premises. This was found to be a deprivation of the right to counsel in violation of the Sixth Amendment. The critical point in the *McDonald* case, of course, was the fact that the prosecutor was emphasizing McDonald's reliance upon counsel in a situation where often counsel is not present. The jury in *McDonald* would have no knowledge of the use of counsel by the defendant at the search if the prosecutor had not made the point, thus implying that the use of counsel at least hinted at guilt.

Mack's situation is entirely different. Counsel were in court, and the situation was spread before the jury throughout the trial. While the prosecutor's remark falls somewhat short of the high level of evenhandedness expected of those responsible for prosecutions in United States courts, any error in the prosecutor's remarks was harmless beyond a reasonable doubt. *See Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Harryman v. Estelle*, 616 F.2d 870 (5th Cir. 1980).

## PROSECUTORIAL REMARK PUTTING HIS OWN CREDIBILITY IN ISSUE

Mack argues that the prosecutor caused reversible error when he made the following statement during voir dire:

MR. WUESTER: Is there anyone here among you who, if the government proves its case beyond a reasonable doubt, which it intends to do or I wouldn't be here today, ___

MR. GOLDSTEIN: Your Honor, we're going to object to counsel placing his own credibility into issue here. The reason he is here today is because he is representing the government. By stating it in the manner in which he does, he is somehow impugning the government with greater credibility because he wouldn't be here unless he believed in his case. Your Honor, we believe that is putting his own personal belief in issue.

MR. WUESTER: I agree, your Honor, and I will rephrase the question.

THE COURT: All right.

MR. WUESTER: If the government proves its case beyond a reasonable doubt, is there anyone here among you who could not, for whatever reason, vote guilty? Thank you.

■ In making the remark about his personal commitment to proving his case, the prosecutor was either bolstering the credibility of as-yet-uncalled witnesses or expressing an opinion about the facts at issue in the case. The comment was inappropriate for either purpose. Fed.R.Evid. 608(a)(2) (bolstering credibility of witnesses); *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978) (expression of prosecutor's opinion). However, the remark caused no prejudice. After defense counsel objected, the prosecutor immediately withdrew the question and properly phrased it. At least twice during his charge, the district court cautioned the jury that remarks made by the lawyers were not to be considered as evidence. The error is harmless. *See United States v. Weinrich*, 586 F.2d 481 (5th Cir. 1978); *United States v. Morris*, 568 F.2d 396 (5th Cir. 1978); *United States v. Herrera*, 531 F.2d 788 (5th Cir. 1976); *United States v. Smith*, 517 F.2d 710 (5th Cir. 1975).

### REFERENCE TO "STING" OPERATIONS

Finally, Mack complains of the following two questions and responses during the prosecutor's examination of DEA agent Alphin:

Q. Sir, are you familiar with a movie called "The Sting" or the sting operations that we had in Fort Worth?

A. Yes, sir.

Q. Where officers purchased stolen merchandise that was sold to them by people that steal the merchandise?

A. Yes, sir.

After a sidebar discussion with defense counsel and the court, the prosecutor stated that he would stop the line of questioning and save the analogy to entrapment for closing argument. However, he did not mention "sting" operations again in the jury's presence. Defense counsel did not move to strike the questions and answers, move for a mistrial, or request an instruction that the jury disregard the remarks.

■ Mack contends that the references were irrelevant and prejudicial. This attempt by the prosecutor to prove, by initiating the drawing of an analogy to "sting" operations, that Mack had not been entrapped cannot be found to have inflamed the minds of reasonable jurors so as to constitute plain error. *See United States v. Fendley*, 522 F.2d 181, 185–86 (5th Cir. 1975). Mack cites *United States v. Hawkins*, 480 F.2d 1151 (D.C.Cir.1973), as authority for the proposition that this reference was so prejudicial that reversal is in order. We disagree. In *Hawkins* the prosecutor had compared the defendant, who was relying on the defense of insanity, to several notorious criminals, including Sirhan Sirhan and Jack Ruby who unsuccessfully had used the same defense. The *Hawkins* prosecutor also had compared the defendant to Napoleon and Adolf Hitler. The court of appeals found those comparisons to be "clearly designed to arouse the passion and prejudice of the jury." 480 F.2d at 1154. We see no such design here. Nor do we see any actual prejudice from this brief and quickly terminated episode.

We find no merit in any assigned error. The convictions are AFFIRMED.