**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Steven POSNER,**
**Defendant–Appellant.**

No. 87–6230.

United States Court of Appeals,
Fifth Circuit.

Feb. 2, 1989.

Robert G. Turner, Houston, Tex., for defendant-appellant.

Scott H. Behnke, Frances H. Stacy, Paula C. Offenhauser, Asst. U.S. Attys., Henry Oncken, U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before WISDOM, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Robert Steven Posner appeals his convictions for violations of federal drug statutes and one of his sentences. We affirm all convictions, but vacate one part of his sentence, and remand for resentencing.

## I

Frank Mirdjani, a thrice-convicted drug dealer, worked with Drug Enforcement Administration ("DEA") Agent Spasaro as a paid confidential informant. Mirdjani first met Robert Posner, the defendant, in July of 1985 at a bar and grill in Houston, Texas, where Mirdjani operated his valet parking service. Posner brought up the subject of cocaine and offered to supply unlimited amounts at reasonable prices. Later, however, when Mirdjani contacted

Posner at Posner's directive, Posner refused to discuss the subject. Agent Spasaro advised Mirdjani to refrain from any further conversations until Posner renewed contact.

Posner did so in May 1986 and reiterated to Mirdjani his interest in dealing in large quantities of drugs. Mirdjani introduced Agent Spasaro to Posner at Posner's place of business. Thereafter Agent Spasaro and his "business partner/body guard," DEA Agent Console, met with Posner several times. Spasaro posed as a "semi-retired" businessman engaged in the "import-export" business, a none-too-veiled reference to Spasaro's pretended drug smuggling activities.

On August 7, 1986, Posner contacted Agent Spasaro and initiated a negotiation aimed at importing marijuana and cocaine from South America. Posner said that he knew people who were interested in buying cocaine and that he could "move the merchandise." On August 11, Posner related to Spasaro the details of the marijuana and cocaine smuggling operation which he conducted with his brother, Irwin Posner. On August 19, Robert Posner stated that he had previously arranged for the importation of hashish from Greece and other parts of Europe into the United States, that he could supply large amounts of cocaine "with no problem," and that he was then brokering about twenty kilograms.

On September 13, 1986, Mirdjani informed the DEA agents that Posner had told him Posner was "ready to deal" and that he could provide fifty to one hundred kilograms of cocaine each month at a price ranging from $25,000 to $28,000 per kilogram depending on the quality. The DEA authorized Mirdjani to negotiate the purchase of a kilogram of cocaine. After daily contacts between Mirdjani and Posner, on September 29, 1986 Posner called Mirdjani to tell him "that the deal [was] on." With Spasaro's clearance, Mirdjani met with Posner and negotiated for ten kilograms of cocaine. Posner drove Mirdjani to the house of Posner's supplier, Smith, and later to Smith's "stash house" where the negotiations were completed.

Wishing to remove the cocaine from the streets and to obtain further evidence without having to arrest Posner and abort the investigation into Posner's sources, Spasaro instructed Mirdjani to arrange to complete the cocaine transfer at 4:30 that afternoon at a designated public place, whence Posner could plausibly "escape." At the conclusion of Mirdjani's negotiations with Smith and Posner as to price, meeting place, and manner of transfer, Mirdjani received from them approximately one kilogram of cocaine, presumably as a sample and a show of good faith. Posner and Smith followed Mirdjani to the prearranged location, where Mirdjani was met by two "buyers" who were Houston undercover policemen. Mirdjani was "arrested" and the cocaine was "confiscated." Posner and Smith rapidly exited the parking lot and were allowed to "escape."

The next day Mirdjani was released from prison. He told Posner that he was released on a technical defect in his arrest, and, with the help of Spasaro and Console, was able to allay Posner's suspicion arising from the previous day's "bust" that he was an informant. Posner was already under pressure from Smith to pay Smith for the kilogram of cocaine that the police had confiscated. Mirdjani proposed that he and Posner conduct further drug deals and give Smith the profits until the debt was satisfied. Smith, who himself was being pressed for the price of the lost kilogram of cocaine by his Colombian suppliers, agreed to the scheme.

In October 1986 the DEA decided to expand the investigation of the Posner brothers and their sources to include a reverse undercover operation to sell large quantities of marijuana to the Posner brothers and seize monies from them. Posner arranged for a meeting with Console at a local bar on November 24, 1986 and inquired as to the delivery date of two thousand pounds of marijuana, the sale of which Posner was negotiating with Agent Spasaro. When told that the shipment would probably be within the next month, Robert Posner stated that the timing would present "no problem" because he was an-

ticipating completion of a cocaine transaction with Agent Console before that time. During the period from November 1986 through January 1987, the negotiations by Robert Posner for the purchase of marijuana from Spasaro continued simultaneously with his negotiations for the sale of cocaine to Mirdjani.

Smith, who had contacted Mirdjani several times during this period to arrange for the sale of the ten kilograms of cocaine, was arrested on February 5, 1987, for participating in the cocaine transaction. A search of Smith's residence uncovered a ledger maintained by Smith detailing his cocaine and marijuana transactions and mentioning Posner's name in connection with both. Posner was arrested the same day by Agent Spasaro after completion of the reverse marijuana transaction. In exchange for $40,000 in cash and the promise of an additional $35,000, which was on deposit in Irwin Posner's bank account, Agent Spasaro supplied two hundred fifty pounds of marijuana. This buy represented a "test" purchase on behalf of the Posners' buyer, who wanted to make certain that the sellers were not government agents. Thereafter, the Posners would supply this buyer fifteen hundred additional pounds of marijuana in regular installments. The payment of cash took place in a hotel room in Houston. According to the prearranged plan, Agent Console loaded a van supplied by the Posners with the marijuana and delivered it to the hotel. Posner was arrested after one of his representatives took custody of the marijuana.

Posner was later indicted on charges of aiding and abetting the possession of, and conspiracy to possess, one kilogram of cocaine with intent to distribute, in violation of 18 U.S.C. § 2, and 21 U.S.C. §§ 841(a)(1) and 846. He was also charged by the same indictment with aiding and abetting the possession of, and conspiring to possess, over one hundred kilograms of marijuana with intent to distribute, in violation of 18 U.S.C. § 2, and 21 U.S.C. §§ 841(a)(1) and 846.

Prior to trial, the court severed the cocaine counts (counts 2 and 3) from the marijuana counts (counts 1 and 8), and ordered that Posner stand trial on the cocaine charges first. Posner's trial on the cocaine counts began August 24, 1987. On September 1, a jury returned a guilty verdict on both the substantive offense of possession with intent to distribute and the conspiracy charge. Thereafter, Posner pled guilty to the marijuana counts.

On November 23, 1987, the trial court entered an order imposing a fifteen-year concurrent sentence on each count, and a four-year supervised release term on count 8. The judgment reflects that the sentences for counts 2 and 8 were pursuant to 21 U.S.C. § 841(b)(1)(B). Posner appealed his convictions.

## II

The central question on appeal is whether, in attempting to rebut Posner's entrapment defense, the government met its burden of showing beyond a reasonable doubt that the defendant was predisposed to commit the crime charged in the cocaine counts as required by *United States v. Henry*, 749 F.2d 203, 207 n. 5 (5th Cir.1984) (en banc). At Posner's trial on cocaine charges, the government was allowed—over objection—to introduce evidence of Posner's involvement in an attempt to purchase marijuana that occurred more than three-and-a-half months after Posner says the cocaine conspiracy terminated. Posner argues that such assertedly *post hoc* evidence was not competent to show predisposition to deal in cocaine and should not have been admitted. He further argues that because it was evidence of another crime, it should have been admitted only in accordance with the balancing requirement of Rule 404(b), Fed.R. Evid. as interpreted in *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc). Posner contends that the trial court, after balancing the harm of the admission of this extraneous conduct against its probative value, should have excluded the testimony as unfairly prejudicial. We think the evidence was properly admitted.

First, as discussed in Part III of this opinion, the conspiracy to deal in cocaine reasonably can be viewed as a continuing

one that did not end with the "mock bust" on September 29, 1986, as Posner maintains, but lasted until the final arrests on February 5, 1987. The evidence of other drug dealings, including the marijuana transaction that occurred after Posner's first cocaine transaction, is relevant to predisposition because it shows Posner's familiarity with the drug world, his contacts in that world and his sophisticated skills and expertise in drug dealing, all independent of what may be attributable to dealing with a government agent. A reasonable jury could conclude that this background must have been a product of experience in drug dealing gained over a considerable time by a man who thought of himself as a "professional" and was ready to deal in either marijuana or cocaine. Posner's purchase of the two hundred fifty pounds of marijuana, an enormous quantity, also is evidence that Posner was in the drug-dealing business and possessed a high degree of willingness to participate in these activities. Thus, although the government's predisposition evidence was *post hoc* evidence in the sense that it occurred after Posner's cocaine transaction on September 29, 1986, it was nonetheless clearly competent to show mental state or predisposition to deal in drugs at the time of his initial contacts with government agents.

■ Second, with respect to the Rule 404(b) argument, the record indicates that the marijuana transaction was not extrinsic to the the cocaine conspiracy but was integral to it. On August 7, 1986, Posner contacted Agent Spasaro and initiated a negotiation aimed at importing both marijuana and cocaine from South America. Moreover, between October 1986 and February 1987, Posner was simultaneously arranging the sale of cocaine to Mirdjani and the purchase of marijuana from Console and Spasaro. The connection between the two transactions is demonstrated by the conversation between Console and Posner that took place on November 24, 1986. According to Console's testimony, when Posner asked when Spasaro would deliver the two thousand pounds of marijuana, Console

answered that delivery probably would be within the next month. In response, Posner told Console when the cocaine shipment was expected to arrive, suggesting that Posner would use the money from the cocaine sale to purchase the marijuana, or that the two transactions were otherwise linked:

> He (Posner) said that that's no problem, that the ten—he was expecting ten or fifteen kilograms of cocaine coming in within the next week or two; that he talked to his people down in South America and also down in Miami and that the shipment would be arriving and that I should expect to be able to pick ten or fifteen kilograms up within the next couple of weeks.

Furthermore, the records seized in the search of Smith's house showed that Posner was involved with Smith in both cocaine and marijuana deals. Because it is clear that the cocaine and marijuana transactions were overarching and interconnected, the requirements imposed by Rule 404(b), which relate to extrinsic conduct, are not at issue here. Thus, we cannot say that the district court abused its discretion in admitting the evidence of the marijuana deal.

■ In any event, in assessing the admissibility of this evidence, we are governed by our holding in *United States v. Mack*, 643 F.2d 1119, 1121–23 (5th Cir. 1981). There, we held that evidence of the defendant's subsequent, extrinsic offense was admissible because it fairly rebutted the defendant's claim of entrapment by proving disposition to commit a criminal act and, in the light of careful jury instructions, its prejudicial effect did not outweigh its probative value. We see no significant factual distinctions between *Mack* and the instant case. As in *Mack*, the district court in the instant case admitted the evidence of the subsequent offense to show predisposition and instructed the jury with sufficient care to limit any prejudice to the defendant so that it did not outweigh the probative value of the evidence.[1]

1. The trial judge instructed the jury on the use of the extrinsic evidence as follows:

Finally, in view of what we have said above, the appellant's argument that the district court erred because it failed to conduct the on-the-record, two-step analysis for the admission of extrinsic offense evidence as prescribed in *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (en banc) is meritless.

### III

The second issue on appeal was whether the evidence is sufficient to support the jury's determination that Posner conspired to possess with intent to distribute over one kilogram of cocaine.

■ Posner argues that the evidence was insufficient to support his cocaine convictions since, even if there was a conspiracy to distribute cocaine on September 29, the cocaine seized in the mock bust that day weighed less than one kilogram, not more than one kilogram as alleged in the indictment. Posner further argues the government has not proved that the conspiracy continued after the mock bust, since it has not proved an agreement between two or more persons, excluding informants and government agents. *United States v. Rodriguez*, 765 F.2d 1546 (11th Cir.1985). We reject these arguments.

There need only be evidence in the record from which a rational trier of fact could conclude that Posner was involved in a conspiracy to possess with intent to distribute more than one kilogram of cocaine. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). The record here clearly indicates that there was a conspiracy, that its initial purpose was to deliver ten kilograms of cocaine, and that on September 29 Posner and Smith agreed to provide Mirdjani two-and-a-half kilograms of cocaine. Thus, the jury reasonably could conclude that the purpose of the conspiracy was to distribute more than a kilogram of cocaine.

■ As for the period following September 29, there was merely a continuation of the conspiracy. During this period, Posner was a party to continuing negotiations about how Mirdjani could repay Smith for the kilogram of cocaine lost in the mock bust. As a means of paying off Smith and making profits for himself as well, Posner arranged to sell Mirdjani ten kilograms of cocaine. Thus, there was sufficient evidence to show that Posner knowingly and voluntarily participated in a conspiracy to distribute more than one kilogram of cocaine that continued beyond September 29.

### IV

■ The third issue on appeal is whether a guilty plea is rendered involuntary by the failure to admonish the defendant as to parole eligibility. Posner pled guilty to count 1, the marijuana conspiracy, and to count 8, the substantive count of aiding and abetting the possession with intent to distribute more than one hundred kilograms of marijuana. Count 8 is a violation of 21 U.S.C. § 841(a)(1), and sentencing under that statute is controlled by 21 U.S.C. § 841(b)(1)(B), which expressly provides that no person sentenced under this statute shall be eligible for parole during the term of imprisonment imposed therein.

Fed.R.Crim.P. 11 controls how guilty pleas are to be taken and states in part:

(c) Advice to defendant. Before accepting a plea of guilty or nolo contendere, the court must address a defendant personally in open court and inform him of, and determine that he understands the following: (1) the nature of the charge to which the plea is offered, the *mandatory*

---

On the other hand—and you had evidence of the government about his dealing not only in the cocaine, but in a marijuana transaction and obtaining the funds, apparently, to pull off a very substantial marijuana buy. I believe it was $40,000 or something.

Now, the fact that evidence of that transaction was offered, jurors, by the government and admitted by the court, again, on the matter of intent and to show state of mind of the accused, you could not base a conviction for cocaine because a person committed a marijuana offense.

He's not charged with that, but we're talking here about a cocaine conspiracy, but the evidence was admissible to show if it does, in fact, show his state of mind and knowledge of the drug business because, here, Mr. Posner said, "I did not know about this. I did not engage in this. I was a businessman."

*minimum penalty provided by law, if any, and the maximum possible penalty provided by law....* (Emphasis supplied).

The court informed Posner of the minimum and maximum penalties associated with the crime; however, it did not inform him that the offense in count 8 was not parolable under 21 U.S.C. § 841(b)(1)(B). Posner alleges that the failure to admonish him of the unavailability of parole renders his plea invalid. Posner's contention is without merit.

The test for determining whether a guilty plea is voluntary is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985). The failure to advise a defendant of collateral consequences of a plea of guilty does not render it involuntary. *Holloway v. Lynaugh,* 838 F.2d 792, 794 (5th Cir.1988). A defendant need not be furnished with information about parole eligibility in order for his guilty plea to be voluntary and the current rules of procedure governing the entry of guilty pleas in the federal courts do not require it. *Hill,* 474 U.S. at 52, 106 S.Ct. at 369.

### V

The final issue on appeal is whether the trial court was authorized to impose a four-year term of supervised release as to count 8. The government admits that under *United States v. Byrd,* 837 F.2d 179 (5th Cir.1988) (supervised release that replaces the mandatory special parole term of 21 U.S.C. § 841(b) did not take effect until November 1, 1987), the court improperly imposed a sentence of supervised release. Thus the sentence is invalid and is hereby vacated, and we remand for imposition of a special parole term under the provisions of section 841(b)(1)(B), which was in effect at the time the offense occurred. *United States v. De Los Reyes,* 842 F.2d 755 (5th Cir.1988).

### VI

Accordingly, for the reasons stated in this opinion, the judgment of the district court is

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.