704 So.2d 121 (1997)
John KENT, Appellant,
v.
STATE of Florida, Appellee.
No. 96-3337.
District Court of Appeal of Florida, First District.
October 15, 1997.
*122 Nancy A. Daniels, Public Defender; Paula S. Saunders, Assistant Public Defender, Tallahassee, for Appellant.
Robert A. Butterworth, Attorney General; Timothy A. Freeland, Assistant Attorney General, Tallahassee, for Appellee.
PADOVANO, Judge.
The defendant, John Kent, appeals his conviction for possession of cocaine. Two arguments are presented for reversal: (1) the trial court erred in allowing the state to use a subsequent drug transaction as evidence of the defendant's predisposition to sell cocaine; and (2) the court erred in excluding as hearsay the testimony of several witnesses who had overheard previous conversations between the defendant and the undercover officers who purchased the cocaine. We conclude that the trial court properly admitted the evidence of the subsequent offense and therefore reject the defendant's argument on that point. However, we agree that the court erred in excluding as hearsay the previous conversations between the defendant and the undercover officers. On that ground we reverse for a new trial.

I.
The state alleged in Count I of the information that the defendant sold cocaine on December 7, 1995, and in Count II that he sold cocaine on December 12, 1995. These two charges were severed and the parties proceeded to trial on the earlier offense alleged in Count I. At trial, Detectives Samuel Koivisto and Robert Beers of the Jacksonville Sheriff's Office testified that they had purchased cocaine from the defendant in what they referred to as a "camera buy." The detectives were in an unmarked police vehicle with a hidden video camera when they encountered the defendant on the street and asked him whether he could get them some cocaine. The defendant agreed, got into the car, and directed them to the location where he would make the purchase for them from an undisclosed third party. When they arrived, the defendant got out of the car and came back with thirty dollars' worth of cocaine, which the officers purchased. As a part of the plan, the officers then left with the cocaine and the videotape of their encounter with the defendant.
The defendant testified on his own behalf and asserted the defense of entrapment. He said that the officers tried to get him to buy cocaine for them on ten to twelve occasions during a period of several months before the December 7 sale but that he had refused each time. On cross-examination, and again in its rebuttal case, the state countered this defense with evidence that the defendant had sold cocaine five days after the offense in question. This was the evidence in support of the charge made in Count II of the information.
Over an objection by the defense, Officer Scott Clifton related the facts of the subsequent offense. He said that on December 12, 1995, he was driving approximately one block from the defendant's house when he saw the defendant exchange money for a substance later identified as a rock of cocaine. Officer Clifton was unaware of the investigation against the defendant involving the December 7 sale. After the defendant left, Officer Clifton apprehended the man who had purchased the drugs. At the officer's request, the man then agreed to buy drugs from the defendant again in the officer's presence. Another sale with the defendant ensued within a few minutes, and, upon completion of the sale, undercover officers standing by arrested the defendant.
The trial court ruled that the evidence of the subsequent crime was admissible to prove the defendant's predisposition to commit *123 the charged offense. This ruling was based on the similarity of the two acts, their proximity in time, and their proximity in location. The defendant contends that the trial court erred in admitting the evidence of these later transactions. Noting that the state had offered the evidence as proof of his predisposition to sell drugs, the defendant argues that only prior, not subsequent, acts are admissible to show predisposition.
Also during trial, the defense attempted to introduce the testimony of three witnesses who had overheard conversations between the defendant and the undercover officers at various times before the offense. Each of these witnesses said that the undercover officers had previously asked the defendant to purchase drugs and that he had refused. The trial court excluded all of this testimony on the ground that it was hearsay. Defense counsel argued that, because the defendant was relying on the entrapment defense, the hearsay exception for state of mind, section 90.803(3), Florida Statutes, applied and rendered the testimony admissible to show the defendant's state of mind. The court disagreed, ruling that statements by anyone other than the defendant could not show the defendant's state of mind under the exception.
At the conclusion of the trial, the jury found the defendant guilty of the lesser included offense of possession of cocaine. Following an unsuccessful motion for new trial, the defendant was adjudicated guilty and sentenced to a term of incarceration in the Department of Corrections. By this appeal he seeks review of his conviction.

II.
We find no error in the trial court's decision to admit evidence of the December 12 cocaine sales to show the defendant's predisposition to sell the drug on December 7. The defendant argues that any act occurring after a charged offense cannot, by definition, prove predisposition to commit the prior charged offense. In our view, this argument places too high a premium on the time of the collateral offense. A subsequent offense could reveal a criminal intent formed earlier. Depending on the circumstances, a subsequent offense might also complete a pattern of criminal activity that refutes a claim of police inducement. In the present case, the state's proof that the defendant sold drugs to a private individual shortly after selling drugs to the police tends to refute the defendant's claim that he had sold the drugs to the police only because of their inducement.
Federal courts have held that evidence of similar crimes or activities may be relevant to show that a defendant has a proclivity to commit the crime charged, whether the collateral activity occurs before or after the offense. For example, in United States v. Mack, 643 F.2d 1119 (5th Cir.1981), the Fifth Circuit held that evidence of a drug transaction occurring a few weeks after the charged drug offense was admissible to show predisposition where the defendant relied on the entrapment defense. Citing United States v. Boyd, 595 F.2d 120 (3rd Cir.1978), United States v. Warren, 453 F.2d 738 (2nd Cir. 1972), and United States v. Rodriguez, 474 F.2d 587 (5th Cir.1973), the court explained that subsequent acts may be introduced to counter an assertion of entrapment.
The court in Mack took particular note of the Rodriguez case, in which the "government offered evidence showing that Rodriguez had sold cocaine twenty days after the commission of the offenses with which he was charged." In Rodriguez, the Fifth Circuit approved the admission of subsequent-act evidence and held that "prior or subsequent incidents may be introduced to establish that a defendant possessed a requisite knowledge or that there is a consistent pattern, scheme of operations, or similarity of method."
The court concluded in Mack that the subsequent-act evidence in the case before it fairly rebutted the defendant's claim that he lacked any predisposition to commit the charged crimes. To support this conclusion, the court offered the following reasoning:
the evidence of the [later] sale of cocaine also showed a specific propensity to commit the particular crime of the sale of drugs. Despite Mack's protest to the contrary, the evidence showing that he had engaged in the [later] drug sale, even though that sale occurred after the incidents for which he was tried, did have a *124 tendency to make it more probable that he was predisposed to commit the original offense charged....
Mack, at 1122.
Likewise, in United States v. Posner, 865 F.2d 654 (5th Cir.1989), the Fifth Circuit held evidence of subsequent activities admissible to prove predisposition and thus to rebut the defendant's entrapment defense. The court found that evidence of the defendant's involvement in an attempted marijuana sale three and one-half months after the charged cocaine conspiracy had allegedly ended was admissible under Mack. The court also explained why the evidence, although post hoc, tended to prove the defendant's propensity to commit the charged crime, noting that it showed his "familiarity with the drug world, his contacts in that world and his sophisticated skills and expertise in drug dealing, all independent of what may be attributable to dealing with a government agent."
The relevance of subsequent collateral offenses to show predisposition was also addressed in United States v. Moschiano, 695 F.2d 236 (7th Cir.1982). There, the Seventh Circuit adopted the reasoning in Mack and Rodriguez and held that, in the trial of the defendants on charges of distribution of heroin and conspiracy to distribute heroin, evidence of one defendant's attempt to make an illegal purchase of the drug preludin some three months after the charged offense was admissible to show predisposition, in rebuttal of an entrapment defense. The court noted its own decision in United States v. Carreon, 626 F.2d 528, 535-536 n. 14 (7th Cir.1980), in which it stated that, "[w]hile it is true that predisposition turns on a defendant's mental state prior to commission of the crime, that mental state may be proved by relevant and admissible evidence concerning the defendant's actions either before or after commission of the crime."
Evidence of subsequent offenses is arguably less probative than evidence of prior acts, but the ultimate issue in either case is whether the evidence is relevant to prove the defendant's intent. As the court said in Moschiano, evidence of subsequent acts "does have a tendency to make it more probable that the defendant was predisposed to commit the offense charged." In addition, the court stressed that the admissibility of subsequent acts depends heavily on its probative value and prejudicial effect, which the trial court must balance.
It is apparent from these authorities that subsequent-crime evidence may be relevant and therefore admissible in federal courts to show predisposition in rebuttal of an entrapment defense. The rule is no different in Florida. While the defendant relies on State v. Drolet, 549 So.2d 1172 (Fla. 2d DCA 1989), the only state opinion addressing the issue, we find that case to be distinguishable. In Drolet, the Second District held that "[e]vidence of acts approximately six months subsequent to the time of the charged crimes was not relevant to prove predisposition to commit those crimes." Professor Ehrhardt distinguishes Mack and Drolet by explaining that, in Drolet, the two offenses were separated by too great a time (six months) to allow the evidence to be admissible to prove propensity. Charles W. Ehrhardt, Florida Evidence, § 404.15, n.3 (1997 ed.). He also explains the admissibility in general of post hoc crime evidence to show predisposition, noting the significance of proximity of time and place:
If the defendant alleges entrapment as a defense, evidence of prior criminal activity is admissible to disprove the entrapment. Prior criminal activity which is similar to the crime in issue is relevant to the defendant's predisposition to commit the crime. So, too, actions which take place after the event in question may be so closely connected in time to the event, that they are relevant as to defendant's predisposition.
Ehrhardt, § 404.15, at 184.
In the present case the trial court took notice of Professor Ehrhardt's distinction between Mack and Drolet and relied on it in ruling that evidence of the subsequent offenses was admissible. The court specifically pointed out the fact that the sales occurred only five days after the charged offense and on the same street, which was the street where the defendant lived. We agree with this analysis and therefore hold that the trial court did not abuse its discretion in admitting the collateral crime evidence to show propensity.

*125 III.
We conclude, however, that the trial court erred in excluding as hearsay the testimony of the three defense witnesses who had overheard previous conversations between the defendant and the undercover officers. An out-of-court statement is hearsay only if it is offered to prove the truth of the matter asserted. See § 90.801(1)(c), Florida Statutes (1995); Chatman v. State, 687 So.2d 860 (Fla. 1st DCA 1997). See also Ehrhardt, § 803.3a ("If an out-of-court statement of a person is offered as circumstantial evidence of his or her state of mind, the statements are not hearsay and are admissible, if relevant.") Based on these authorities we conclude that the testimony offered by the defense was not hearsay.
The substance of the conversations between the defendant and the undercover officers was relevant under sections 90.401 and 90.402, Florida Statutes, because it tended to prove a material fact, i.e, lack of predisposition. A defendant who raises the defense of entrapment must first prove by a preponderance of the evidence that the police acted to entrap him. If the defendant meets this burden, the state must then prove beyond a reasonable doubt that the defendant was predisposed to commit the crime charged. See Munoz v. State, 629 So.2d 90 (Fla.1993). Therefore, evidence tending to show either entrapment techniques by the police or lack of predisposition is relevant in an entrapment case. For example, in Duncan v. State, 616 So.2d 140 (Fla. 1st DCA 1993), we held that the trial court erred in excluding testimony that was relevant, because that evidence supported a theory of the defense. We stated in Duncan that the "attempt to provide what the defense deemed a satisfactory explanation could hardly go to more critical matters...." Id. at 142.
In this case, the statements by the undercover detectives were not offered for their truth, but rather to illustrate the alleged inducement resulting from the fact that the statements were made. The issue is not whether it was true that the detectives wanted to purchase cocaine. On the contrary, the statements have independent evidentiary value in that they reveal the detectives' entreaties of the defendant. Likewise, statements by the defendant in these out-of-court conversations tend to show his lack of predisposition to commit the crime charged. The defendant's repeated rejection of the detectives' offer is evidence that logically supports his claim that he was not inclined to sell drugs before the alleged inducement. For this reason, the statements were relevant non-hearsay and should have been admitted.
Exclusion of this evidence could not have been harmless error, since the testimony was "crucial to the appellant's defense of entrapment." See Crumley v. State, 534 So.2d 909, 910 (Fla. 1st DCA 1988); see also Duncan, supra. Nor can we say that the exclusion of this evidence was rendered harmless by the jury verdict finding the defendant guilty of the lesser offense of possession of cocaine. Whether entrapment is available as a defense to possession of contraband depends on the facts. Compare, English v. State, 301 So.2d 813 (Fla. 2d DCA 1974), and Beasley v. State, 354 So.2d 934 (Fla. 2d DCA 1978), with Cooper v. State, 378 So.2d 793 (Fla.App. 2d DCA 1980) and State v. Harklerode, 567 So.2d 982 (Fla. 5th DCA 1990). Here, entrapment might have been available as a defense to the lesser charge of possession, because the defendant obtained the drug at the request of the officers after the alleged inducement. Based on the record, we are unable to say beyond a reasonable doubt that the verdict finding the defendant guilty of the lesser offense of possession rendered the error harmless.

IV.
In summary, we affirm the trial court's ruling on the admissibility of the subsequent crime evidence but hold that the statements of the three witnesses regarding the conversations between the defendant and undercover officers were not hearsay, and that the exclusion of this testimony was error requiring reversal and a new trial.
Affirmed in part and reversed in part.
ALLEN and WEBSTER, JJ., concur.